The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Jerry Rodean HARRIS, Defendant-Appellant.

No. 83CA0147.

Colorado Court of Appeals, Div. II.

May 2, 1985.

Rehearing Denied May 30, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, First Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for defendant-appellant.

KELLY, Judge.

Defendant, Jerry Harris, appeals his conviction of vehicular homicide and leaving the scene of an accident, arguing that the trial court erred in failing to suppress statements and in failing to instruct the jury on a lesser included offense. We reverse.

After drinking intoxicants at a bar one evening, David Flores asked defendant Harris for a ride home. Harris drove Flores to an isolated road north of Fort Collins where he asked to be dropped off. As Flores, who was very intoxicated, began to walk into an open field, Harris became concerned, turned the car around, and drove back to look for him. Flores was on the road, and Harris' car struck him. Harris stopped the car and went to find Flores; after determining that Flores was dead, Harris panicked and drove away.

I.

Defendant argues that the trial court erred because it failed to suppress his statements obtained through custodial interrogation before *Miranda* warnings were given. We agree.

■ The prosecution may not use statements stemming from custodial interrogation of a defendant unless it demonstrates that the defendant had been adequately warned of his privilege against self-incrimination and his right to counsel, and thereafter voluntarily, knowingly, and intelligently waived those rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ A person is in custody for *Miranda* purposes if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. *People v. Pancoast*, 659 P.2d 1348 (Colo.1982); *People v. Gutierrez*, 198 Colo. 118, 596 P.2d 759 (1979). Here, the trial court ruled that, when the incriminating statements were made, defendant was not in custody and, therefore, his *Miranda* rights were not violated. We conclude that that ruling was error as a matter of law.

Fragments of the left front park light of a 1968 Mercury were found by the police at the scene of Flores' death. As a result, the

next afternoon Officer Elder of the Fort Collins Police Department was on the lookout for a car of that type when he saw the defendant driving a 1968 full-size Mercury, with the left front park lens missing. Officer Elder followed the car into a parking lot, approached Harris immediately as he exited his car, asked him for license and registration, and proceeded to question him before advising him of his *Miranda* rights. Officer Elder testified at trial that Harris was not free to leave. There was no testimony to the contrary, and the undisputed facts do not allow an inference that Harris was not in custody for *Miranda* purposes.

■ Interrogation occurs when the police use words or engage in actions that are reasonably likely to evoke an incriminating response from the defendant. *People v. Lee*, 630 P.2d 583 (Colo.1981). The critical inquiry is not whether the police considered the defendant a suspect, but whether the defendant was exposed to a risk of self-incrimination by the interrogation. *People v. Lee, supra.*

Before advising Harris of his rights, Officer Elder asked him whether he had been involved in any recent accidents, and whether anyone else had driven the car during the last 24 hours. Harris responded that he was the only one who had driven the car during that time, and that he had not been involved in any accidents.

■ The officer then examined the front of the car, noticed that the left front park light was damaged and that there appeared to be slight traces of blood on the driver's door. The officer asked Harris how the damage had occurred, and he answered that it had been there when he purchased the car. The officer then asked Harris how long he had owned the vehicle and from whom he had purchased it. The officer further asked Harris if he had been in the area of the accident the previous night and for an account of his activities over the last 24 hours. Harris said he had not been in the area of the accident and that he had spent the day drinking in several bars in downtown Fort Collins with a friend. These questions exposed Harris to the risk

of self-incrimination, and we hold that Harris was interrogated within the meaning of *Miranda*. Hence, defendant's statements to Officer Elder should have been suppressed.

II.

Defendant argues that his subsequent statements should also have been suppressed as the statements were the product of the initial illegal interrogation and therefore tainted. We disagree.

■ Failure to administer *Miranda* warnings creates a presumption of compulsion, and consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence. *Miranda v. Arizona, supra.*

The United States Supreme Court recently decided in *Oregon v. Elstad*, —— U.S. ——, 105 S.Ct. 1285, 84 L.Ed.2d 222, 36 Crim.L.Rptr. 3167 (1985) that *Miranda* does not require that the statements and their fruits be discarded as inherently tainted. Rather, the court ruled that a careful and thorough administration of *Miranda* warnings may cure the condition that rendered the previous unwarned statement inadmissible. According to *Oregon v. Elstad*, the warning conveys the relevant information and thereafter a suspect's choice whether to exercise a privilege to remain silent should ordinarily be viewed as an act of free will. The court reasoned that there is no basis for presuming a coercive effect where the suspect's initial inculpatory statement, though technically in violation of *Miranda*, was voluntary.

■ Pursuant to *Oregon v. Elstad*, the relevant inquiry is whether in fact the second statement was also voluntarily made. The finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of any statements. The fact that a suspect chooses to speak after being informed of his rights is highly probative. Thus, a suspect who has once responded to an un-

warned yet uncoercive questioning is not thereafter disabled from waiving rights and confessing after *Miranda* warnings have been given. *Oregon v. Elstad, supra.*

Immediately after the initial questioning near defendant's car, Officer Elder advised defendant of his *Miranda* rights and ordered him to sit in the police car. At about 2:10 p.m., some other officers arrived at the scene and Harris was transferred into State Trooper Olthoff's patrol car. Olthoff advised Harris of his rights for the second time, and Harris then made a written statement which was consistent with his previ-. ous oral statements to Officer Elder. Olthoff then orally interrogated Harris for some time, but he stuck to his original story.

At about 3:00 p.m., Olthoff handcuffed Harris and drove him to the sheriff's office where he was booked. Detective Wilson then took Harris upstairs to the interrogation room. After ten minutes of questioning, Harris broke down and for the first time admitted that he had been involved in the accident. For the next .30 to 35 minutes, Wilson interrogated Harris concerning the details of the accident. Wilson found a police officer witness, went through the confession a second time, and then decided to tape record the confession. Harris was read his *Miranda* rights for the third time, and the third confession was taped.

■ Under these circumstances, the defendant knowingly and voluntarily waived his right to remain silent. There is no evidence that either the environment or the manner of the initial interrogation was coercive. And, although belated, the reading of defendant's rights was complete and was repeated three times. Thus, although defendant's initial statements to Officer Elder prior to *Miranda* warnings are not admissible, defendant's subsequent statements are not rendered inadmissible under *Oregon v. Elstad, supra.*

## III.

The defendant next argues that his confessions to Detective Wilson should have been suppressed because the officer threatened him, thereby rendering the confessions involuntary. This argument is without merit.

■ A confession is admissible only if it is voluntary and statements may not be extracted by any sort of threats, violence, or direct or implied promises. *People v. Freeman,* 668 P.2d 1371 (Colo.1983). In determining whether a statement is voluntary, the totality of the circumstances must be considered. *People v. Freeman, supra.* An appellate court is bound by the trial court's factual findings when supported by adequate evidence in the record and will not lightly disturb the trial court's findings concerning the voluntariness of a defendant's statements. *People v. Freeman, supra.*

■ Here, Detective Wilson told defendant not to lie and merely indicated that the situation would be more serious if defendant lied. Under these circumstances, this exhortation to tell the truth cannot be considered a threat. The trial court's determination that defendant's statements were voluntary is supported by the record and will not be disturbed on review. *People v. Freeman, supra.*

## IV.

Defendant next argues that his confessions to Detective Wilson should have been suppressed after defendant's lawyer was denied access to defendant during the interrogation in which the confessions were obtained. We agree.

■ Effective assistance of counsel is one of the most fundamental rights of the accused. *People v. O'Neill,* 185 Colo. 202, 523 P.2d 123 (1974). When law enforcement officers have failed to admit counsel to a person in custody or to inform the person of the attorney's efforts to reach him, they cannot thereafter rely on defendant's waiver of counsel for the use of his subsequent uncounseled statements.

*State v. Haynes*, 288 Or. 59, 602 P.2d 272, *cert. denied*, 446 U.S. 945, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1979). In *State v. Haynes*, the court reasoned that a defendant's decision to:

> "pass up an abstract offer to call some unknown lawyer is very different from refusing to talk with an identified attorney actually available to provide at least initial assistance and advice, whatever might be arranged in the long run. A suspect indifferent to the first offer may well react quite differently to the second. If the attorney appears on request of one's family, that fact may inspire additional confidence...."

Here, the record reveals that after being pulled over by Officer Elder and being questioned, and out of the hearing of the police officers, the defendant asked his companion to call his brother and to tell him to get the defendant an attorney. The defendant's brother retained a lawyer for the defendant at approximately 3:45 in the afternoon. The lawyer, Arnaud Newton, immediately departed for the police station and arrived shortly before 4:00 p.m.

After arriving at the station, Newton indicated to the control station deputy that he was defendant's lawyer and that he wished to speak with the defendant. A second deputy standing nearby told Newton that the defendant was presently being interrogated by Detective Wilson. Newton replied that that was why he was there and that he wished to talk to the defendant and did not want the defendant interrogated. The second deputy then went upstairs to look for the defendant. A short time later the control station deputy received a telephone call and told Newton that they were unable to find either Detective Wilson or the defendant.

Newton continued to wait at the station and eventually asked a third deputy who responded, "That's investigation's problem, it's not our problem." At about 4:30 p.m. the control deputy told Newton that they were still unable to find Detective Wilson or the defendant. Newton gave his card to the deputy and asked him to give it to

either Wilson or Harris and left the station. The defendant and Detective Wilson were in the interrogation room during the entire period that Newton was attempting to reach the defendant.

■ Under these circumstances, defendant was denied the right to counsel. As the court reasoned in *People v. Pinzon*, 44 N.Y.2d 458, 406 N.Y.Supp.2d 268, 377 N.E.2d 721 (1978),

> "[T]he right to counsel is of little value if the attorney cannot communicate with the defendant or with the officials holding him in custody or can only reach them after extended delay when the investigation is, in effect, completed. The police, of course, must recognize this and must also realize that even though the defendant may not have retained counsel prior to being taken into custody, an attorney, later retained by friends or family ... may wish to consult with him while he is being questioned by the police. And when an attorney does not know where the defendant is being held, there is little doubt that the police are better equipped than he is for locating the defendant or the officers immediately or ultimately responsible for the investigation. Indeed if the police have a person in custody they should be charged with knowledge of his whereabouts.
>
> "In sum, once a person has been taken into custody, the burden is on the police to keep track of him and to establish and maintain procedures which will insure that an attorney representing him may communicate with him and with the officials responsible for the investigation, without unreasonable delay...."

■ Here, unknown to the defendant, an identified attorney, whom defendant had requested, was seeking an opportunity to consult with him. The police did not inform him of that fact, nor did they make a serious effort to locate the defendant upon his attorney's request. Thus, any statements or the fruits of any statements obtained after the police knew of the attorney's efforts to reach the defendant cannot be rendered admissible on the theory that

the defendant knowingly and intelligently waived counsel. *State v. Haynes, supra.*

## V.

Defendant's argument that the trial court should have submitted to the jury the defense's tendered instruction on driving while intoxicated as a lesser included offense of vehicular homicide is without merit. *Daniels v. People,* 159 Colo. 190, 411 P.2d 316 (1966) is dispositive.

█ The judgment is reversed and the cause is remanded for a new trial. Defendant's initial statements to Officer Elder prior to *Miranda* warnings must be excluded. The trial court is directed to hold a hearing in order to determine at what stage of defendant's interrogation defendant's attorney arrived at the police station and requested to see his client. All of defendant's statements made subsequent to the time at which defendant's counsel arrived at the police station to see him must be excluded.

BERMAN and VAN CISE, JJ., concur.