The **PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

v.

**Damon D. KOOLBECK,**
**Defendant-Appellant.**

**No. 83CA0795.**

Colorado Court of Appeals,
Div. I.

May 9, 1985.

Rehearing Denied June 6, 1985.

**674**

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Eric Perryman, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Barbara S. Blackman, Deputy State Public Defender, Denver, for defendant-appellant.

BABCOCK, Judge.

Defendant, Damon D. Koolbeck, appeals from the judgment of conviction entered on jury verdicts finding him guilty of second degree burglary, theft, aggravated motor vehicle theft, and conspiracy. We affirm.

I.

Defendant first contends that he was denied the right to a speedy trial under § 18–1–405, C.R.S. (1978 Repl.Vol. 8). The prosecution contends that the six-month limitation imposed by § 18–1–405(1), C.R.S. (1978 Repl.Vol. 8) was extended for the duration of the continuance granted by § 18–1–405(6)(g)(I), C.R.S. (1978 Repl.Vol. 8). We agree with the prosecution.

The prosecution filed a motion for continuance and a hearing on that motion was held four days prior to the scheduled trial date. At the hearing, there was testimony that an accomplice of defendant, whose trial was set for six weeks thereafter had made a statement implicating him in the crimes charged. Although the prosecution earlier had worked out a tentative plea agreement with the accomplice whereby he would be available to testify against defendant, through no fault of the prosecution, the accomplice backed out of the plea agreement and stated his intent to exercise his Fifth Amendment privilege against self-incrimination. The motion for continuance was granted and the trial date was set for

April 18, 1983, more than six months beyond defendant's entry of not guilty pleas.

Under § 18–1–405(6)(g)(I), C.R.S. (1978 Repl.Vol. 8), for the duration of a continuance granted the prosecution to be excluded from the speedy trial period the prosecution must establish, and the court must find on supporting evidence, that certain criteria have been fulfilled. These criteria are that: (a) the continuance was necessary because of the unavailability of material evidence intended to be presented by the prosecution; (b) the prosecution exercised due diligence in attempting to make the evidence available on the scheduled trial date; and (c) reasonable grounds exist to believe that the evidence will be available on the date to which the trial is sought to be continued. *Sweet v. Myers*, 200 Colo. 50, 612 P.2d 75 (1980); *see Marquez v. District Court*, 200 Colo. 55, 613 P.2d 1302 (1980).

The granting or denying of a motion for a continuance lies within the sound discretion of the trial court. *United States v. Tedesco*, 726 F.2d 1216 (7th Cir.1984); *Miller v. People*, 178 Colo. 397, 497 P.2d 992 (1972). After reviewing the record, and the findings of the trial court upon each of these elements, we conclude that the trial court did not abuse its discretion in granting the prosecution's motion for a continuance.

### A.

Defendant argues that the accomplice's testimony was not material since a policeman was available to make an eyewitness identification of defendant. We disagree.

Testimony may be material, or "essential" to the government's case, even if the government could convict without such testimony. *United States v. Tedesco, supra.* It is not necessary that a witness' testimony be absolutely indispensable to justify a reasonable delay. *United States v. Hay*, 527 F.2d 990 (10th Cir.1975). Therefore, so long as there is a showing that the evidence is relevant to the prosecution's case, it is material within the mean-

ing of § 18–1–405(6)(g)(I), C.R.S. (1978 Repl.Vol. 8).

Here, the accomplice was the only person who made a statement implicating defendant. His testimony would concern facts beyond mere eyewitness identification of defendant. Hence, his testimony would be material to the prosecution's case. *See Murphy v. District Court*, 195 Colo. 149, 576 P.2d 163 (1978).

### B.

Defendant next argues that the failure of the prosecution to grant immunity to, or to dismiss the charges against, the accomplice belies any claim by the prosecution of due diligence. Again, we disagree.

There is no requirement that the prosecution grant immunity to, or dismiss the charges against, a potential witness in order to make him available for an accused's trial. Rather, the government may complete the trial of an important witness in order to make his testimony available against the accused, unless there is a showing that the delay arising therefrom was designed to prejudice the defense. *See United States v. Fairchild*, 526 F.2d 185 (7th Cir.1975); *also see United States v. Tedesco, supra.*

Here, there was no showing of delay designed to prejudice the defense. The undisputed testimony was that the prosecutor desired to complete the accomplice's trial in order to make him available as a witness against defendant. Because he was proceeding to that end without undue delay, a reasonable continuance for the purpose of completing that trial was justified. *See Murphy v. District Court, supra.*

### C.

Finally, defendant argues that, since the accomplice intended to invoke his Fifth Amendment privilege, the prosecution had no reasonable grounds to believe that his testimony would be available at the later date. Again, we disagree.

■ The presence or absence of reasonable grounds must be viewed from the evidence available at the time of the hearing, and not in retrospect. *See Murphy v. District Court, supra.* Although a witness announces his intention to invoke the Fifth Amendment at the accused's trial, under the totality of the circumstances, the prosecution can have reasonable grounds to believe that the witness will be available to testify at a later date, after his own trial is concluded and he is no longer subject to further prosecution. *Murphy v. District Court, supra; People v. Scheidt,* 182 Colo. 374, 513 P.2d 446 (1973).

■ Here, the trial court knew that the accomplice would be tried on December 15, 1982. The court was entitled to believe that if either the accomplice was acquitted or if he was convicted but did not appeal, then his testimony would be available for trial at the later date. Therefore, the trial court did not err in its finding that the prosecution had reasonable grounds to believe that the accomplice's testimony would be available on April 18, 1983.

## II.

### The Motion to Suppress

Defendant next contends that two statements made by him to police officers some three to four hours after the burglary were the product of an illegal arrest and, therefore, should have been suppressed by the trial court. We disagree.

At about 4:00 a.m. on January 28, 1982, a burglary occurred in Loveland. The police were alerted to a dark-colored pickup containing three or four Hispanic males. Some minutes later, a vehicle and its occupants matching this description were spotted by an officer and pursued. The pursuit escalated into a chase, which ended when the truck turned off the highway onto a dirt road.

The occupants fled on foot into the surrounding fields, which contained shrubbery, trees, low grass, some wheat, and a few houses and businesses. Defendant was confronted by the officer at gunpoint near the abandoned pickup, but before he could be taken into custody, he escaped.

A search of a four-square-mile area was begun. At about 7:30 a.m., the Loveland police chief spotted defendant as he walked out of a storage yard in a field within the search area. There were no businesses nearby, nor were any other persons in the vicinity. The chief drove up to defendant and asked him to get into the front seat. After defendant complied, he was asked what he was doing in the area. He answered that he was from Denver looking for a job, and that his mother had dropped him off on a street to the west. The chief knew that the nearest street to the west was more than one-half mile away, and that he had not seen defendant on the road when he had passed that way some thirty minutes earlier.

A pat down search disclosed no weapons. Defendant was then handcuffed and placed in the back seat of another patrol car. Minutes later the original pursuing officer arrived and identified defendant as the occupant of the pickup who had fled earlier.

Defendant was taken to the Loveland police department where he was advised of his *Miranda* rights, which he waived. He stated that he had been in Northglenn and had become upset over his personal life, that he began hitchhiking and was picked up by a woman with blond hair and blue eyes, and that at approximately 7:30 a.m., he had been let off at a county road intersection in the vicinity of his confrontation with the police chief.

### A.

### The First Statement

Defendant contends that he was arrested when he was asked to get into the police car because the police chief testified that he would not have permitted defendant to leave the car. Therefore, defendant asserts, his first statement should have been suppressed because no *Miranda* warning was given. We disagree.

■ Whether a person has been "seized" under the Fourth Amendment, and thus is in custody for purposes of the Fifth Amendment, is determined by an objective standard. *People v. Johnson,* 671 P.2d 958 (Colo.1983); *People v. Pancoast,* 659 P.2d 1348 (Colo.1982). The officer's subjective state of mind is not the appropriate standard. *People v. Johnson, supra; see People v. Black,* 698 P.2d 766 (Colo. 1985).

■ We need not decide whether the objective test was met in this case because, even if we assume a "seizure" under the Fourth Amendment, it was a "limited seizure" for the purpose of questioning a suspect who might otherwise escape as to his identity and for the purpose of obtaining an explanation of his behavior. *See People v. Schreyer,* 640 P.2d 1147 (Colo.1982).

■ A limited seizure is justified where three conditions exist: (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *People v. Tate,* 657 P.2d 955 (Colo.1983). These conditions were met in this case.

■ When the chief first saw defendant he knew from information supplied by fellow officers that: (1) a burglary had occurred; (2) male Hispanic suspects had been pursued to a place nearby; and (3) they had eluded arrest by running into the adjacent fields and hiding. The storage area within the search area, which defendant was walking away from, was not a business or other place open to the public. Defendant matched the description of the suspect who had fled from the gunpoint confrontation between the pursuing officer and the driver of the suspect vehicle. These facts, taken as a whole, are sufficient to have raised a reasonable suspicion in the chief that defendant was, or had been, engaged in criminal activity. *See People v. Bell,* 698 P.2d 269 (Colo.1985).

■ A brief detention for the purpose of determining whether the detainee was involved in the reported criminal activity is sufficient to meet the reasonable purpose requirement of the *Tate* test. *See People v. Perez,* 690 P.2d 853 (Colo.1984). Since that was the chief's intention when he stopped defendant, the intrusion was reasonable. *See People v. Perez, supra; People v. Cobbin,* 692 P.2d 1069 (Colo.1984).

■ When a suspect is stopped for the limited purpose of discovering whether he was involved in criminal activity, intrusion by police officers must not be greater than necessary to detain the suspect and inquire about his activities. *People v. Cobbin, supra.*

Here, we note defendant complied with the chief's request to sit in the front seat and that defendant was not handcuffed or otherwise physically restrained. In light of the chief's information at the time, we do not consider his asking the defendant to sit in the front seat of the police car, while he conducted brief and cursory questioning, unreasonable under the circumstances.

■ Thus, since the three-prong test of *Tate* was met, we hold that the chief's detention of the defendant was lawful, and that a *Miranda* warning was not necessary for the questions asked. Therefore, the defendant's first statement was admissible at trial.

### B.

### The Second Statement

The defense contends that the second statement should have been suppressed because it was the product of an illegal arrest. Again, we disagree.

■ Although defendant may have been placed under arrest without probable cause when handcuffed, *see People v. Cobbin, supra,* probable cause to arrest existed within minutes thereafter when defendant was identified by the pursuing officer. *See People v. Villiard,* 679 P.2d 593 (Colo. 1984). A short time later, before giving the second statement, defendant received a

full and complete *Miranda* advisement. There is no evidence that either the environment or the manner of the following interrogation was coercive. *See People v. Harris,* 703 P.2d 667 (Colo.App.1985).

We conclude that under these circumstances defendant knowingly and voluntarily waived his right to remain silent. *See People v. Harris, supra.* Thus, the second statement need not be suppressed as the product of the illegal arrest because its taint was attenuated by the pursuing officer's identification of him within minutes of the handcuffing, coupled with the full and complete *Miranda* advisement which he received shortly thereafter. *See Oregon v. Elstad,* — U.S. —, 105 S.Ct. 1285, 84 L.Ed.2d 222, 36 Crim.L.Rptr. 3167 (1985); *People v. Harris, supra.* Cf. *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).

Judgment affirmed.

PIERCE and SMITH, JJ., concur.