The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Billy J. PAGE, Defendant–Appellant.

No. 93CA1367.

Colorado Court of Appeals, Div. II.

March 2, 1995.

Rehearing Denied April 13, 1995.

Certiorari Denied Dec. 11, 1995.

628

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Laurie A. Booras, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge BRIGGS.

Defendant, Billy Joe Page, appeals the judgments of conviction on two counts of attempted first degree murder, two counts of first degree assault, and four counts of crime of violence. Defendant challenges, among other things, the admissibility of evidence obtained pursuant to search warrants, of a confession he made after his arrest and while a public defender was attempting to contact him, of testimony by a witness who contacted police, and of a police report documenting defendant's confession. He also contends that the trial court abused its discretion when it sentenced him to forty years in prison for each conviction of attempted murder and erred in imposing consecutive sentences for the first degree assault and attempted murder convictions as to each victim. We affirm the judgments of conviction.

The sentences imposed are also affirmed, except that the cause is remanded to the trial court with directions to amend the mittimus to impose concurrent, rather than consecutive, terms of imprisonment for the assault and attempted murder convictions as to each victim.

## I.

As two women were jogging in the desert near Grand Junction, they were approached by a man on a motorcycle. He dismounted, walked toward them, raised a pistol, and began firing. Each woman was shot once, the first in the chest, the second in the hand. Both fell to the ground. The man walked closer. He shot each woman a second time, the first in the face, the second in the back of the head.

When one of the women heard the gun clicking, as if it were out of bullets, she got up, struggled with the man, and yelled at her friend to run. Both women fled before he could reload. The man did not pursue them further. Both women survived.

The police investigation led to defendant. His defense at trial was misidentification.

## II.

Defendant contends the trial court erred in failing to suppress evidence obtained pursuant to search warrants and a Crim.P. 41.1 order for nontestimonial identification. He argues that the supporting affidavits, which were virtually identical, failed to establish a sufficient nexus between the criminal act, the property to be seized, and the place to be searched, and that omitted material facts rendered the affidavits so misleading as to make the finding of probable cause erroneous. We are not persuaded.

### A.

The Fourth Amendment and Colo. Const. art. II, § 7, prohibit the issuance of a search warrant except upon probable cause supported by oath or affirmation particularly describing the place to be searched or the objects to be seized. Under both constitutions, probable cause exists when an affidavit

for a search warrant alleges sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched. *People v. Abeyta,* 795 P.2d 1324 (Colo.1990); *People v. Quintana,* 785 P.2d 934 (Colo.1990).

 The issuing judge or magistrate is to make a practical, common-sense decision whether, given the totality of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. The duty of a reviewing court is to ensure that the judge or magistrate had a substantial basis for concluding that probable cause existed. Doubts concerning the existence of probable cause are to be resolved in favor of the determination by the judge or magistrate in order to avoid giving police an incentive to resort to warrantless searches. *People v. Abeyta, supra.*

 Here, the affidavits each consisted of a thirteen-page statement by the investigating officer. The affidavits recounted reports from numerous interviews with the victims, the crime scene investigation, and citizen responses to the publication of a composite drawing of the suspect, including that of an acquaintance of defendant who reported defendant's suspicious activities after the shootings. The affidavits also recounted the affiant's inspection of defendant's motorcycle and the similarities between its tire treads and photographs of tread marks left at the crime scene. Finally, the affidavits report a statement by a citizen who had seen a gun in defendant's home after the shootings.

The information in the affidavits provided a substantial basis for the issuing judge's finding of probable cause. *See United States v. Rahn,* 511 F.2d 290 (10th Cir.1975). We will therefore not disturb that finding on appeal. *See People v. Pate,* 878 P.2d 685 (Colo.1994).

### B.

 The omission of material facts known to the affiant at the time the affidavit was executed may cause statements within the affidavit to be so misleading that a find-

ing of probable cause based on such statements may be deemed erroneous. *People v. Winden,* 689 P.2d 578 (Colo.1984). However, "an omitted fact [is] material for purposes of vitiating an entire affidavit only if its omission rendered the affidavit substantially misleading to the judge who issued the warrant.... By the same token, omission of facts relative to a statement in an affidavit should require striking the statement only if the statement is substantially misleading without the missing facts." *People v. Unruh,* 713 P.2d 370, 381 (Colo.1986). Omissions that are the product of an intentional effort to mislead the issuing judge or magistrate or a reckless disregard of known material facts would normally justify more severe sanctions than errors occurring for other reasons. *People v. Winden, supra.*

 Here, the omissions from the affidavits challenged by defendant, including those concerning the number of composite drawings of the suspect, the existence of and information given by telephone tipsters other than the acquaintance of defendant, and the description of the color of the motorcycle on different occasions by the victims, do not render the affidavits misleading. There is no requirement that all steps taken, all information obtained, and all statements made by witnesses during the course of an investigation be described fully and in chronological order in an affidavit. None of the omitted information made the affidavits, or any statements in them, misleading as to the existence of probable cause.

### III.

 Defendant also contends that the search warrants could not be properly issued based on the affidavits because a virtually identical affidavit was submitted in support of the motion for an order for nontestimonial identification pursuant to Crim.P. 41.1, and in that motion the prosecutor included a statement that "there are reasonable grounds, not yet amounting to probable cause to arrest, that the suspect Billy Joe Page may have committed the offense." Defendant argues that this constitutes a judicial admission that

there was no probable cause for issuance of the search warrants. We disagree.

Defense counsel failed to make this argument to the trial court. Our review is therefore limited to determining whether the trial court committed plain error in issuing the search warrants because of the statement in the Crim.P. 41.1 motion. *See* Crim.P. 52(b); *People v. Kruse*, 839 P.2d 1 (Colo.1992). Plain error exists only if we can say with fair assurance that the error so undermined fundamental fairness as to cast serious doubt on the reliability of the judgment of conviction. *See Wilson v. People*, 743 P.2d 415 (Colo.1987).

A judicial admission is a "formal, deliberate declaration which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters of facts about which there is no real dispute." *People v. Garcia*, 826 P.2d 1259, 1263 (Colo.1992).

Here, the statement in the motion was a recitation of one of the bases for the issuance of an order for nontestimonial identification set forth in Crim.P. 41.1(c). However, in order to obtain the order, it was not necessary that the prosecutor establish that in fact no probable cause for arrest existed. Rather, it was necessary to establish that at least reasonable grounds existed to suspect that the subject of the order committed the offense. *See generally People v. Harris*, 762 P.2d 651 (Colo.1988).

In these circumstances, we do not consider the rote recitation of a minimum legal standard to be a declaration made "for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." *See People v. Garcia, supra.* The trial court therefore did not commit plain error in issuing the separate search warrants based on the supporting affidavits.

## IV.

Defendant asserts the trial court erred in failing to suppress the confession he made after his arrest. He argues that the affidavit supporting the arrest warrant suffered from deficiencies similar to those he asserted in regard to the affidavits supporting the search warrants, and thus, the confession was the fruit of an illegal arrest.

For the same reasons that we have concluded there was no error in the issuance of the search warrants, we find no error in the issuance of the arrest warrant. The trial court therefore did not err in refusing on this basis to suppress defendant's confession.

## V.

Defendant's next contention is that the failure of the Sheriff's Department to advise him during his interrogation of the presence of two public defenders who sought to meet with him, as well as the Department's failure to interrupt his interrogation for such a meeting, violated his constitutional and statutory rights and requires suppression of his confession during that interrogation. Under the circumstances presented here, we disagree.

## A.

Defendant was brought to the jail at approximately 4:00 p.m. Defendant's booking process lasted about 20 minutes. He was then advised of his *Miranda* rights and, after waiving those rights, was interrogated by the Sheriff until approximately 6:15 p.m. Within these two hours, defendant confessed.

After a short break the Sheriff, along with another investigator, again advised defendant of his *Miranda* rights. After defendant again waived those rights, he confirmed his prior statements.

During the first part of the interrogation, at approximately 5:45 p.m., two public defenders arrived at the jail and sought to meet with defendant. They appeared so that an indigency application to secure representation could be prepared for defendant, if one was necessary. At this time, neither of the attorneys had been appointed to represent defendant.

Upon the advice of the District Attorney's office, police and jail authorities refused to allow the public defenders access to defendant. They also refused to inform defendant that the public defenders were present at the jail.

Defendant concedes that, because adversarial judicial criminal proceedings had not been initiated at the time of his interrogation, his Sixth Amendment right to counsel is not at issue. *See People v. Vigoa,* 841 P.2d 311 (Colo.1992).

### B.

The United States Supreme Court in *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), determined that the failure to inform a suspect that an attorney retained for the suspect is available and desires to meet with the suspect does not affect the validity of the suspect's otherwise voluntary, knowing, and intelligent waiver of Fifth Amendment rights. The Court reasoned that, even though the information may well have been useful to the suspect, events occurring outside his presence and unknown to him could have no bearing on his capacity to comprehend and knowingly relinquish a constitutional right.

Nor did the Supreme Court find any violation of the suspect's right to due process. Even though the police had conveyed false information to a retained attorney regarding plans to subject the suspect to interrogation, the Court concluded that such conduct "falls short of the kind of misbehavior that so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States." *Moran v. Burbine,* 475 U.S. at 433–34, 106 S.Ct. at 1147, 89 L.Ed.2d at 429.

■■■ The Supreme Court's decision in *Moran* sets the federal standard in this area. However, states remain free to adopt their own standards for the conduct of their employees and officials as a matter of state law. *Moran v. Burbine, supra; compare People v. Houston,* 42 Cal.3d 595, 230 Cal.Rptr. 141, 724 P.2d 1166 (1986) (declining to follow *Moran* ) *with State v. Hanson,* 136 Wis.2d 195, 401 N.W.2d 771 (1987) (following *Moran* ). Defendant urges us to adopt standards that would lead to a different conclusion in this case. We decline the invitation.

■■■ The pressure inherent in a custodial interrogation may cause a suspect to respond differently to an abstract offer of counsel than to an opportunity to meet with counsel retained by or for the suspect and immediately available. *See People v. Harris,* 703 P.2d 667 (Colo.App.1985). However, we are not persuaded that one suspect's decision to waive the right to remain silent becomes involuntary, unintelligent, or unknowing merely because, unknown to the suspect, an attorney who has not been retained is willing to meet with the suspect, while the same waiver decision by another suspect, without such an attorney immediately available, remains voluntarily, intelligently, and knowingly made. We therefore find no violation of defendant's right under Colo. Const. art. II, § 18, not to be compelled to testify against himself.

■■■ The separate federal constitutional right of due process requires fairness, integrity, and honor in the operation of the criminal justice system and its treatment of the citizens' cardinal constitutional protections. *Moran v. Burbine, supra* (Stevens, J., dissenting); *see also* 1 ABA, *Standards for Criminal Justice,* Standards 5–5.1 & 5–7.1 (2d ed. 1982). We agree that defendant's right to due process under the Colorado Constitution requires no less.

■■■ However, in this case, unlike in *Moran,* the attorneys who sought access to defendant were strangers to defendant. When defendant was being interrogated, they had neither been appointed by the court nor requested by defendant or his family or friends to represent defendant. Further, the police at no time conveyed any false information to the attorneys, and their refusal to allow them access to defendant was based on advice from the District Attorney's office. At least in these circumstances, we find no violation of defendant's right to due process under Colo. Const. art. II, § 25. *See Harvey v. State,* 529 So.2d 1083 (Fla.1988); *cf. People v. Harris, supra,* 703 P.2d 667.

### C.

■■■ Defendant also argues that the actions of the police violated his statutory rights under §§ 21–1–101(1), C.R.S. (1986 Repl.Vol. 8B); 21–1–103, C.R.S. (1994 Cum. Supp.); 21–1–104, C.R.S. (1986 Repl.Vol. 8B);

16–3–402, C.R.S. (1986 Repl.Vol. 8A); and 16–3–403, C.R.S. (1986 Repl.Vol. 8A), and that the violation of these statutory rights invalidated his waiver of Fifth Amendment rights. We disagree.

Sections 21–1–101, 21–1–103, and 21–1–104 essentially provide for representation of an indigent person if requested by such person while under arrest or if ordered by the court. Here, neither basis for representing defendant existed at the time of his interrogation.

■ Section 16–3–402(1), C.R.S. (1986 Repl.Vol. 8A) provides that if a person in custody indicates a desire to speak with an attorney or the court determines that an inquiry into the matter of indigency should occur, then the public defender must be permitted to communicate with that person to determine whether he or she has counsel and, if necessary, whether he or she is indigent. A division of this court has previously determined that the statute is merely a codification of the constitutional right to counsel in criminal cases. Cooper v. Director of Department of Revenue, 42 Colo.App. 109, 593 P.2d 1382 (1979). Further, during the interrogation at issue, defendant gave no indication that he desired to speak with an attorney and the court had not determined that an inquiry into the matter of indigency should occur.

■ Section 16–3–402(3)(b), C.R.S. (1986 Repl.Vol. 8A) separately provides that the public defender, upon his or her request and with due regard for reasonable law enforcement administrative procedures, shall be permitted to determine whether or not any person in custody has been taken without unnecessary delay before the nearest available county or district judge. Here, the public defenders were aware of the time of the arrest. Further, the interrogation in question, immediately after booking, did not fall outside reasonable law enforcement administrative procedures.

■ Section 16–3–403 generally provides that a person in custody shall be allowed to consult with an attorney of this state whom such person desires to see or consult. Here, defendant made no such request.

We therefore find no violation of defendant's statutory rights.

## VI.

■ Defendant asserts that the trial court violated his constitutional right to a fair trial by failing to explain to prospective jurors the qualifications for jury service, the grounds for challenge for cause, and jurors' duty to inform the court of anything which would disqualify them from serving. We are not persuaded.

■ The trial court failed to conduct the voir dire examination required by Crim.P. 24(a)(2). However, defendant failed to object. Thus, our review is again limited to determining whether the omission rises to the level of plain error. See Crim.P. 52(b); Wilson v. People, supra.

The record indicates that, in order to facilitate the selection of jurors, counsel for the defense and prosecution agreed to use a standardized questionnaire. This questionnaire required prospective jurors to respond to questions which addressed the statutory grounds for disqualification and challenge for cause. See § 13–71–105, C.R.S. (1994 Cum. Supp.); § 16–10–103, C.R.S. (1986 Repl.Vol. 8A). Moreover, defendant does not assert that his counsel was prevented from conducting full voir dire examination of prospective jurors. See People v. Crespin, 635 P.2d 918 (Colo.App.1981) (challenge is waived if counsel does not use reasonable diligence on voir dire to determine if a challenge for cause exists). Nor does he contend that any juror was selected who was disqualified or should have been excluded for cause.

Under these circumstances, we conclude that the failure of the trial court to conduct the examination required by Crim.P. 24(a)(2) does not rise to the level of plain error. See Wilson v. People, supra.

## VII.

■ Defendant next asserts the trial court committed reversible error by allowing testimony of a witness who had recognized defendant and contacted the police because the testimony was irrelevant and because a

portion of the testimony included hearsay. We disagree.

### A.

A bank teller testified that she contacted the police after defendant cashed a check, in part because she thought his driver's license picture resembled a composite sketch published in a newspaper. She testified that co-workers agreed defendant looked like the sketch.

 Evidence that explains the circumstances of a defendant's arrest may be admissible because it is relevant to establishing an element of the crime charged. For example, physical evidence obtained or observed at the time of arrest may be relevant to identifying the defendant as the person who committed the crime. *See People v. Boehmer,* 872 P.2d 1320 (Colo.App.1993). Likewise, defendant's actions at the time of arrest may indicate a consciousness of guilt. *See Ortega v. People,* 162 Colo. 358, 426 P.2d 180 (1967).

 Even if the circumstances of a defendant's arrest are not directly relevant to establishing the elements of the crime, such evidence may be admissible as background evidence, if not unduly prejudicial, because it explains the events leading to a defendant's identification and arrest. *See People v. Roybal,* 775 P.2d 67 (Colo.App.1989); *State v. Andrade,* 544 A.2d 1140 (R.I.1988) (trial court did not abuse its discretion in allowing police officer to testify that defendant's photo was included in a photo array because he had thought specifically of defendant when listening to the victim's description of her attacker); *see generally* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 401[05] at 401–29 (1994) ("Evidence that does not relate to any proposition that must be proved may nonetheless be admitted for other purposes including ... background information.").

 The determination of whether evidence is relevant is within the discretion of the trial court. Its decision will not be reversed on appeal absent an abuse of that discretion. *People v. Lowe,* 660 P.2d 1261 (Colo.1983).

Here, the testimony helped explain the circumstances leading to defendant's arrest. We recognize that its relevance was marginal in the context of the entire trial, *cf. United States v. Calhoun,* 544 F.2d 291 (6th Cir. 1976), and that the evidence improperly bolstered the identification of defendant because the jury was capable of making its own independent examination of the composite sketch and defendant's driver's license. Nevertheless, the evidence was merely cumulative of the identification of defendant by the victims and was not likely to confuse or inflame the passions of the jury. *Cf.* CRE 403. The other evidence of his guilt, including his own confession, was overwhelming.

In these circumstances, any error in admitting the evidence was harmless. *See* Crim.P. 52(a); *Kurtz v. People,* 177 Colo. 306, 494 P.2d 97 (1972); *People v. Martinez,* 734 P.2d 650 (Colo.App.1986).

### B.

██ Defendant also contends the trial court committed reversible error when it permitted the bank teller to testify that a customer had earlier told her a man named Page committed the crimes because that testimony was hearsay. However, the statement was part of the explanation for the bank teller's identifying defendant and contacting the police. Further, the customer later testified without objection that he had told the bank teller defendant might have been involved. The other evidence of defendant's guilt, as already noted, was overwhelming. Any error in the admission of the statement was also harmless. *See* Crim.P. 52(a); *Kurtz v. People, supra; People v. Martinez, supra.*

### VIII.

██ Defendant contends that the trial court committed reversible error when it admitted into evidence a written report documenting defendant's confession to the Mesa County Sheriff. Defendant asserts that the report was cumulative of the Sheriff's testimony and was inadmissible to support that testimony. We disagree.

Generally, out-of-court statements cannot be used to bolster the trial testimony of witnesses. However, when a witness is subjected to an express or implied charge of recent fabrication, evidence of a prior consistent statement may be offered to rebut that charge, as long as the witness is subject to cross-examination concerning the statement. Such statements are not hearsay. CRE 801(d)(1)(B); *People v. Andrews,* 729 P.2d 997 (Colo.App.1986).

Here, during the earlier cross-examination of an officer involved in the latter stages of the Sheriff's interrogation of defendant, defense counsel had referred to notes made by the Sheriff during the interview and the fact that those notes had not been preserved. The Sheriff testified that it was his usual practice to use such notes as the basis for a more formal report and then destroy them.

Defense counsel's emphasis on the destruction of the notes amounted to an implied charge that the Sheriff had fabricated defendant's confession. The Sheriff testified at trial and was subject to cross-examination concerning his report. The trial court therefore properly admitted the report pursuant to CRE 801(d)(1)(B).

Defendant asserts for the first time on appeal that the trial court also erred in allowing the jury to take the written report into the jury room with the other exhibits. Because this objection was not raised at trial, our review is again limited to plain error. *See* Crim.P. 52(b); *Wilson v. People, supra.*

An out-of-court statement by a witness in a criminal case normally may not be taken into the jury room during the deliberations. However, a division of this court has previously determined the rule does not apply to a transcript of a voluntary confession by the defendant which has passed all the tests of admissibility and been admitted into evidence. *See People v. Miller,* 829 P.2d 443 (Colo.App.1991).

In the circumstances presented here, giving the report to the jury with the other exhibits did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. Therefore, we find no plain error. *See Wilson v. People, supra.*

## IX.

Defendant's next assertion is that the trial court abused its discretion when it sentenced him to forty years for each attempted first degree murder conviction because, at the time of the crimes, he was twenty-one years old and had no prior felony convictions, and because the trial court failed to consider his potential for rehabilitation. We disagree.

Defendant was convicted of two counts of attempted first degree murder, a class 2 felony. *See* §§ 18–3–102(1)(a) and 18–3–102(3), C.R.S. (1986 Repl.Vol. 8B); § 18–2–101(1), C.R.S. (1986 Repl.Vol. 8B); and § 18–2–101(4), C.R.S. (1994 Cum.Supp.). As such, under § 18–1–105(1)(a)(IV), C.R.S. (1994 Cum.Supp.), the presumptive range of sentencing was eight to twenty-four years.

Defendant, however, was also convicted of crimes of violence. Thus, under § 16–11–309(1)(a), C.R.S. (1994 Cum.Supp.), sentencing must be to a term of at least the midpoint in the presumptive range, but not more than twice the maximum term. The trial court properly determined that the proper range for sentencing on each conviction of attempted first degree murder was therefore between sixteen and forty-eight years.

In this prescribed range, sentencing is within the trial court's discretion. That discretion is to be guided by consideration of a number of factors, including the need to protect the public from further criminal activity, the potential deterrent effect of the sentence, and the rehabilitative needs and potential of the defendant. *People v. Vigil,* 718 P.2d 496 (Colo.1986); *see also* § 18–1–102.5, C.R.S. (1986 Repl.Vol. 8B); § 18–1–409(1), C.R.S. (1994 Cum.Supp.). No one factor is dispositive. *See People v. Vigil, supra.*

The broad discretion accorded a trial court in sentencing follows from recognition that the trial court, because of its familiarity with all the facts of the case, is in the best position to fix a sentence that reflects a balance of the relevant considerations. Hence, an appellate court must determine only whether the sentence is consis-

tent with the nature of the offense, the character of the offender, and the public interest in safety and deterrence. *See People v. Vigil, supra.*

Here, the trial court considered mitigating factors but found that other factors balanced against defendant. Among other things, the court noted that defendant's crimes were random, indiscriminate acts of violence which unnerved the whole community; that defendant continued to deny any responsibility; and that there must be an effective deterrent to this type of activity.

The record indicates that the trial court gave proper consideration to the relevant factors and establishes justification for the sentence imposed. We find no abuse of discretion. *See People v. Vigil, supra.*

### X.

■ Defendant's final contention is that the trial court erred by imposing consecutive, rather than concurrent, sentences for the first degree assault and attempted murder convictions because the evidence supporting the assault and attempted murder charges as to each victim was identical. Because it is possible that the jury relied on the same evidence to convict defendant of the charges as to each victim, we agree.

When criminal counts are based on the same act or series of acts arising from the same criminal episode and the evidence supporting the counts is identical, concurrent sentencing is required. Section 18–1–408(3), C.R.S. (1986 Repl. Vol 8B); *People v. Anderson,* 187 Colo. 171, 529 P.2d 310 (1974). In contrast, a person convicted of two or more *separate* crimes of violence arising out of the same incident must be sentenced for such crimes so that the sentences are served consecutively rather than concurrently. Section 16–11–309(1)(a), C.R.S. (1994 Cum. Supp.).

■ The two statutes should be construed together: crimes of violence are "separate" within the meaning of § 16–11–309(1)(a), and thus require consecutive sentencing, when the evidence supporting the convictions is not "identical" within the meaning of § 18–1–408(3). *See People v. Hahn,* 813 P.2d 782 (Colo.App.1991). Hence, under our statutory framework, judicial authority to impose consecutive sentences for convictions based on crimes of violence depends on whether the convictions resulting from the same act or series of acts are based on "identical evidence."

■ Whether the evidence supporting two or more offenses is identical turns on whether the charges result from the same discrete act, so that the evidence of the act is identical, or from two or more acts fairly considered to be separate acts, so that the evidence is different. *See Qureshi v. District Court,* 727 P.2d 45 (Colo.1986) (acts supporting assault and attempted manslaughter convictions were separated by time and place; evidence was not identical and so consecutive sentencing proper); *People v. DeBoer,* 829 P.2d 447 (Colo.App.1991) (attack on victim one continuous act; evidence was identical and so consecutive sentencing not proper); *People v. Hahn, supra* (acts supporting two assault convictions were against two different victims in two different vehicles; evidence was not identical and so consecutive sentencing proper).

Here, defendant shot each victim twice. Each shot was a separate and distinct act and the evidence of each act was not identical.

However, evidence of both shots at each victim was used to support both the assault and attempted murder charges related to each. For example, the emergency physician who treated the victims testified in response to questioning from the prosecutor that a gunshot wound to the head, which each victim sustained as a result of the *second* set of shots fired, may cause serious bodily injury, an element of the charge of first degree assault.

In closing argument, the prosecutor referred both to the first and second shots into each victim as having caused serious bodily injury. The prosecutor also argued that the victims "had this man try to kill them twice," implying that both sets of shots supported the attempted murder charges.

The jury was instructed that its decision as to any count should be considered separately, uninfluenced by its decision as to any other count, and that "[t]he fact that you may find the defendant guilty or not guilty of one of the offenses charged should not control your

verdict as to any other offense charged. . . ." The jury was not instructed to consider only the first shot at each victim on the assault charges and only the second shot at each victim on the charges of attempted murder.

On this record, the jury could have convicted defendant of the assault and attempted murder charges as to each victim based on identical evidence. Hence, the prosecutor failed to establish a basis for depriving defendant of his right to concurrent sentencing under § 18–1–408(3). The trial court therefore should have entered concurrent sentences on the assault and attempted murder convictions as to each victim. *Cf. People v. Lowe, supra.*

The judgments of conviction are affirmed. The sentences imposed are also affirmed, except that the cause is remanded to the trial court with directions to amend the mittimus to impose concurrent, rather than consecutive, terms of imprisonment for the assault and attempted murder convictions as to each victim.

CRISWELL and ROY, JJ., concur.