2014 COA 59M

The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

John Estle CURREN, Defendant–Appellant.

Court of Appeals No. 11CA1205

Colorado Court of Appeals, Div. II.

Announced May 8, 2014

As Modified on Denial of Rehearing June 19, 2014

470

Adams County District Court No. 97CR3075, Honorable Chris Melonakis, Judge, Honorable Thomas R. Ensor, Judge, Honorable John T. Bryan, Judge

John W. Suthers, Attorney General, Christine C. Brady, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Thomas K. Carberry, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE CASEBOLT

¶ 1 Defendant, John Estle Curren, appeals the judgment of conviction entered on a jury verdict finding him guilty of accessory to murder in the first degree. He asserts that the trial court violated his statutory and constitutional rights to speedy trial and that the court erred by allowing the prosecution to call his former trial attorney to testify against him. We disagree and affirm.

## I. Background

¶ 2 In 2002, defendant was charged with two counts of first degree murder after deliberation, two counts of felony murder, two counts of conspiracy to commit first degree murder, two counts of conspiracy to commit aggravated robbery, and two counts of aggravated robbery. The prosecution eventually dismissed the conspiracy charges.

¶ 3 Before trial, defendant fled to Mexico. He was apprehended and was returned for trial. Following trial, during which defendant did not testify, the jury convicted him on the two felony murder counts and one count of aggravated robbery. The trial court sentenced him to two consecutive sentences of life in prison without parole, and a twenty-four-year prison sentence with five years of mandatory parole to run concurrently with the other sentences imposed.

¶ 4 Defendant appealed the judgment and a division of this court affirmed. *People v. Curren*, 2005 WL 1303964 (Colo.App. No. 02CA1144, June 2, 2005) (not published pursuant to C.A.R. 35(f)) (*Curren I*).

¶ 5 Defendant then filed a Crim. P. 35(c) motion. On April 2, 2009, the postconviction court vacated defendant's convictions and granted him a new trial, concluding that his trial attorney had represented him while having an actual conflict of interest. On April 27, 2009, the prosecution filed a notice of appeal challenging the postconviction court's order.

¶ 6 On May 7, 2009, defendant asserted his right to a speedy trial and demanded that the six-month speedy trial period begin running on that date. The postconviction court concluded that the prosecution's appeal would toll the speedy trial period.

¶ 7 On appeal, a division of this court affirmed the postconviction court's order granting a new trial. *See People v. Curren*, 228 P.3d 253, 257 (Colo.App.2009) (*Curren II*). The mandate issued on April 23, 2010.

¶ 8 On remand, defendant faced two counts of first degree murder and one count of aggravated robbery. He renewed his motion to dismiss the case on speedy trial grounds, which the trial court denied. His second trial began on April 18, 2011.

¶ 9 Defendant elected to testify and offered evidence that he had fled to Mexico before his first trial because his prior trial attorney had advised him to flee there, and his attorney's preparation for trial had been incompetent. The trial court determined that defendant's testimony opened the door to evidence of his flight to Mexico, which had previously been ruled inadmissible in his first trial. The prosecution called defendant's prior trial attorney to provide rebuttal testimony regarding his preparation for defendant's first trial, his general communication with defendant leading up to the first trial, and to refute defendant's testimony that the attorney had advised him to flee to Mexico before the first trial.

¶ 10 Following trial, defendant submitted to the jury the lesser nonincluded offense of accessory after the fact to first degree murder. The jury convicted defendant on the accessory count, acquitted him on the other counts, and the trial court sentenced him to twelve years of imprisonment. This appeal followed.

## II. Speedy Trial

¶ 11 Defendant asserts that the trial court violated his statutory and constitutional rights to speedy trial when it denied his motions to dismiss the charges because the six-month speedy trial period expired during the pendency of the prosecution's appeal from the postconviction court's order granting a new trial, and the prosecution failed to seek a stay of the order. We disagree.

### A. Preservation and Standard of Review

¶ 12 Between the postconviction court's new trial order and the start of the second trial, defendant repeatedly asserted his right to speedy trial, both orally and in writing. In a number of these motions, defendant generally referred to both his statutory and constitutional rights, citing both the United States and Colorado Constitutions. At different times, defendant cited to both state and federal case law. For purposes of this appeal, we conclude that defendant properly preserved both the state and federal claims for appellate review.

¶ 13 "We review a trial court's denial of a motion to dismiss for violation of speedy trial rights as a mixed question of law and fact." *People v. Valles*, 2013 COA 84, ¶ 20, —— P.3d ——. "Thus, we will not disturb the trial court's factual findings underlying its speedy trial decision if those findings are supported by the record. However, we review de novo the trial court's application of those facts to the controlling legal standard." *Id.* (citation omitted). "The application of the speedy trial statute to undisputed facts presents a question of law that we review de novo." *People v. Nagi*, 2014 COA 12, ¶ 12, —— P.3d ——.

¶ 14 Here, the court had no facts to resolve concerning the speedy trial issue. We will therefore review de novo whether the speedy trial period expired during the prosecution's appeal of the new trial order.

### B. Law

¶ 15 The United States and Colorado Constitutions grant a defendant the right to a speedy trial. U.S. Const. amend. VI; Colo. Const. art. II, §§ 16, 25; *Valles*, ¶ 44.

¶ 16 Section 18–1–405, C.R.S.2013, codifies Colorado's constitutional right to a speedy trial. *See People v. McMurtry*, 122 P.3d 237, 240–41 (Colo.2005) ("This statutory protection is meant to give effect to the constitutional right to a speedy trial. The statute does not create any additional rights. Rather, it provides a 'method of securing' the

constitutional right of an accused to a speedy trial." (citations omitted)).

### 1. Statutory Speedy Trial

¶ 17 A criminal defendant must be brought to trial within six months from the date of entry of a plea of not guilty. § 18–1–405(1). However, certain situations can toll the six-month period. The statutory situation relevant to this appeal is "[t]he period of delay caused by an interlocutory appeal whether commenced by the defendant or by the prosecution." § 18–1–405(6)(b), C.R.S.2013.

■ ¶ 18 Section 16–12–102, C.R.S.2013, discusses appeals by the prosecution. Under section 16–12–102(1), C.R.S.2013, the prosecution may appeal any decision of a court in a criminal case upon any question of law, and an order granting a new trial after the entry of a verdict or judgment constitutes a final order that is immediately appealable. *See Curren II*, 228 P.3d at 257. Under section 16–12–102(2), the prosecution may file an interlocutory appeal in the supreme court from various trial court rulings.

■ ¶ 19 However, the classification of an appeal as proceeding from a final order or as being interlocutory for purposes of section 16–12–102 is not dispositive of whether the appeal is considered interlocutory for purposes of the speedy trial statute. *People v. Gallegos*, 946 P.2d 946, 950–53 (Colo.1997). In *Gallegos*, the supreme court determined that an order dismissing some counts of a multi-count indictment is considered a final order that is immediately appealable by the prosecution under section 16–12–102(1). *Id.* at 950. At the same time, the court determined that an appeal from this type of order is interlocutory in nature when viewed "in the context of the entire criminal prosecution." *Id.* Thus, for purposes of section 18–1–405(6)(b), an appeal attacking a dismissal of one or more counts is considered interlocutory and the period of delay attributable to the appeal is properly excluded from the speedy trial period. *Id.* at 953.

¶ 20 In coming to this conclusion, the court noted that "[t]here is some inherent tension in characterizing an order as both interlocutory and final." *Id.* at 951. But the court resolved this tension by recognizing several things. First, the interlocutory appeals contemplated by section 16–12–102(2) are not coextensive with the interlocutory appeals contemplated by section 18–1–405(6). Second, applying the principle of statutory construction presuming that, if a statute lists certain conditions to the exclusion of others, the legislature intended to limit the statute to those conditions explicitly listed would lead to the impractical result of leaving the prosecution with no realistic ability to appeal the order because it could not do so before the speedy trial period expired, and after a trial the issue would become moot. Third, the General Assembly has "provided clear evidence in another context that it does not consider final judgments and interlocutory orders to be mutually exclusive terms" by determining that a trial court's decision on an issue of sovereign immunity " 'shall be a final judgment and shall be subject to interlocutory appeal.' " *Id.* at 951–52 (quoting § 24–10–108, C.R.S.2013).

¶ 21 The court summarized that "[t]he General Assembly has thus demonstrated that it considers some orders to be final judgments for purposes of conferring appellate jurisdiction while at the same time interlocutory in the context of the case as a whole." *Id.* at 952. The court defined "interlocutory" as " '[s]omething intervening between the commencement and the end of a suit which decides some point or matter, but is not a final decision of the whole controversy.' " *Id.* at 950 (quoting Black's Law Dictionary 815 (6th ed.1990)). The court concluded that an interlocutory appeal for purposes of tolling the speedy trial period is

> an appeal which is taken in good faith before a defendant has been convicted and sentence is imposed, and which necessarily disrupts the course of proceeding to a final resolution of the allegations before the court. An appeal is taken in good faith when the assertion that such an appeal is authorized has arguable merit, is not taken for the purpose of delay, and the issues raised have a substantial effect on the prosecution's case. An appeal necessarily disrupts the course of proceeding to a final

resolution when, absent a stay of the proceedings, there can be no effective remedy. *Id.* at 952–53.

¶ 22 If the speedy trial statute provides for automatic tolling, a stay in the trial court is not required to toll the speedy trial period. *People v. Fears*, 962 P.2d 272, 277 (Colo.App.1997) (rejecting the defendant's argument that "the speedy trial period could not have been tolled because a stay of proceedings was not issued" by the trial court during the pendency of an appeal).

### 2. Constitutional Speedy Trial

¶ 23 Under federal law, whether a criminal defendant's right to speedy trial has been violated is determined on a case-by-case basis. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). To determine this issue, a court should balance the length of delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant. *Id.*; *People v. Rios*, 43 P.3d 726, 732 (Colo.App.2001). "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530, 92 S.Ct. 2182.

¶ 24 The acceptable length of delay is longer for more serious crimes. *Id.* at 530–31, 92 S.Ct. 2182. If the delay is caused by a "deliberate attempt to delay the trial in order to hamper the defense," this factor would weigh heavily in favor of a violation of speedy trial. *Id.* at 531, 92 S.Ct. 2182. But a valid reason, such as a missing witness, should serve to justify appropriate delay. *Id.* And if the defendant fails to assert his right, it will be difficult for him to prove that he was denied his right to a speedy trial. *Id.* at 531–32, 92 S.Ct. 2182.

¶ 25 Whether the defendant was prejudiced by the delay is determined by considering three main interests: preventing oppressive pretrial incarceration, minimizing the anxiety and concern of the accused, and limiting the possibility that the defense will be impaired. *Id.* at 532, 92 S.Ct. 2182.

¶ 26 Despite a delay in *Barker* of over five years, the Court determined that this fact was outweighed by other counterbalancing factors, including a lack of prejudice to the defendant. *Id.* at 534, 92 S.Ct. 2182. Some cases have held that delays of two to four years do not result in a violation of the right to speedy trial when the defendant was not prejudiced by the delay. *See Rios*, 43 P.3d at 733 (holding that a two-year delay for resolution of an appeal does not rise to the level of "inordinate delay" necessitating inquiry into the three remaining *Barker* factors); *see also United States v. Smith*, 94 F.3d 204, 212–13 (6th Cir.1996) (holding that a three-year delay while appellate court awaited related decisions pending in superior tribunals did not violate the defendant's right to speedy trial); *United States v. Hawkins*, 78 F.3d 348, 352 (8th Cir.1996) (holding that four-year delay in processing the defendant's appeal did not violate his right to a speedy appeal because the defendant failed to show prejudice); *but see Harris v. Champion*, 15 F.3d 1538, 1560 (10th Cir.1994) (establishing a bright-line rule that a two-year delay gives rise to a presumption of inordinate delay to trigger inquiry into other *Barker* factors). These cases analogize the right to a speedy appeal to the right to a speedy trial, and apply the *Barker* factors to a delay caused by a pending appeal. *Id.*

### C. Application

#### 1. Statutory Speedy Trial

¶ 27 Defendant asserts that the prosecution's appeal of the new trial order did not toll the speedy trial period because the appeal was not interlocutory under section 18–1–405(6)(b). In support of this assertion, defendant argues that because the *Curren II* division concluded that the appeal was not interlocutory for purposes of section 16–12–102, that holding became the law of the case. We disagree.

¶ 28 "The doctrine of the law of the case is a discretionary rule of practice directing that prior relevant rulings made in the same case generally are to be followed." *People v. Janke*, 852 P.2d 1271, 1274 (Colo. App.1992). Thus, "the pronouncement of an appellate court on an issue in a case present-

ed to it becomes the law of the case. Rulings logically necessary to the holding of the appellate court also become the law of the case. The law of the case as established by an appellate court must be followed in subsequent proceedings before the trial court." *People v. Roybal,* 672 P.2d 1003, 1005 (Colo. 1983) (citations omitted).

¶ 29 Here, while it is true that the *Curren II* division concluded that the appeal was not interlocutory for purposes of determining appellate jurisdiction and the time for filing an appeal, *Curren II,* 228 P.3d at 256–57, we conclude that this is not determinative of the outcome in the current appeal. The division's conclusion related only to the appeal's classification under section 16–12–102, and the division specifically declined to address whether the appeal tolled the speedy trial period. *Id.* Hence, its ruling is not determinative or binding on the issue before us under the law of the case doctrine. *See Roybal,* 672 P.2d at 1005.

¶ 30 In addition, Colorado law has clearly established that an appeal that is classified as challenging a final order under 16–12–102(1) for purposes of appellate jurisdiction is not necessarily precluded from being interlocutory in nature so as to toll the speedy trial period under section 18–1–405(6)(b). *Gallegos,* 946 P.2d at 952. The supreme court's reasoning in *Gallegos* leads us to conclude that the prosecution's appeal from the new trial order must be characterized as interlocutory in nature, so as to toll the speedy trial period under section 18–1–405(6)(b), as long as the appeal meets the *Gallegos* criteria: It must have been (1) taken in good faith; (2) filed before the defendant was convicted; and (3) necessarily disruptive of the course of proceeding to a final resolution. *Id.* at 952–53. We conclude that the situation here meets those criteria.

¶ 31 First, we reject defendant's assertion that the prosecution's appeal was not taken in good faith, but rather was filed only to delay the case. The prosecution's appeal was timely filed, the arguments asserted were not frivolous, the appeal was specifically authorized by section 16–12–102(1), and the appeal addressed a question of law that was important for the prosecution going forward –

whether an actual conflict had existed in the representation by defendant's first trial attorney.

¶ 32 Second, at the time of the prosecution's appeal of the new trial order, defendant had been granted a new trial but was being held on bond pending the new trial. Thus, while charges had been filed against defendant, he had not yet been convicted or sentenced in the context of his second trial. *See id.* at 950 (an "interlocutory appeal" under the speedy trial tolling provisions is one that is taken before a defendant has been convicted and sentence imposed). The postconviction court's new trial order determined that defendant's original trial attorney had an actual conflict of interest, but it did not determine whether defendant was ultimately guilty of the charged crimes. *Id.* (an interlocutory appeal "decides some point or matter, but is not a final decision of the whole controversy." (internal quotation marks omitted)).

¶ 33 Third, the appeal of the new trial order necessarily disrupted the course of proceeding to a final resolution. *Id.* at 953 ("An appeal necessarily disrupts the course of proceeding to a final resolution when, absent a stay of the proceedings, there can be no effective remedy."). Concluding that the prosecution's appeal from an order granting a new trial does not toll the speedy trial period would leave the prosecution with no effective remedy and could lead to impractical results. *Id.* If the appeal is considered not interlocutory for purposes of the speedy trial statute, the prosecution would be unable to exercise its statutory right to appeal the order if the defendant chose to assert his speedy trial right. *See id.* at 951–52. Yet once the defendant was retried, the issue would be moot. *Id.* at 952.

¶ 34 Likewise, an issue involving double jeopardy could arise if defendant were acquitted at the second trial, and subsequently a division of this court determined that the postconviction court had improperly granted defendant's Crim. P. 35(c) motion for new trial and ordered reinstatement of defendant's original convictions.

¶ 35 We also reject defendant's contention that the prosecution's filing of an untimely motion to stay the new trial order under Crim. P. 35(c)(3)(V) meant that the prosecution recognized the speedy trial period was running and precludes application of the *Gallegos* criteria. Nothing in Crim. P. 35(c)(3)(V) requires the prosecution to seek a stay to toll the speedy trial period. Instead, "[t] he court may stay its order for discharge of the defendant pending appellate court review of the order," indicating only that the court has discretion to enter a stay. Crim. P. 35(c)(3)(V). Furthermore, the stay is available to prevent the "discharge of the defendant," Crim. P. 35(c)(3)(V), which we interpret to mean allowing a defendant to go free without further prosecution, a situation not present here. The order at issue granted a new trial; it did not conclude that defendant could not be prosecuted further. Additionally, the language of section 18–1–405(6) states that "[i] n computing the time within which a defendant shall be brought to trial ..., the following periods of time *shall* be excluded." The statute provides for an automatic and mandatory tolling of the speedy trial period for the situations listed, regardless of whether the prosecution requests a stay in the trial court.

¶ 36 Hence, the prosecution was not required to file a request and obtain a stay under Crim. P. 35(c)(3)(V) to toll the speedy trial period. *See Fears*, 962 P.2d at 277 (rejecting the defendant's argument that "the speedy trial period could not have been tolled because a stay of proceedings was not issued" by the trial court during the pendency of an appeal).

¶ 37 We also reject defendant's contention that the rule of lenity should be applied here. That rule requires construction of ambiguous statutes in favor of defendants in criminal cases. *People v. Frazier*, 77 P.3d 838, 841 (Colo.App.2003). But here, we do not perceive that section 18–1–405(6)(b) is ambiguous. Instead, we are applying the plain language of the statute as interpreted in *Gallegos* to conclude that the appeal of the new trial order was "interlocutory" within the meaning of section 18–1–405(6)(b), even though it was also "final" in

the sense contemplated by section 16–12–102. Furthermore, the rule of lenity applies only if legislative intent cannot be discerned using other aids to statutory interpretation, *see People v. Pierrie*, 30 P.3d 816, 818 (Colo.App. 2001), and the supreme court in *Gallegos* discerned the General Assembly's intent by employing other aids to interpretation.

¶ 38 Thus, we conclude that the prosecution's appeal of the order granting defendant a new trial was interlocutory in nature for purposes of tolling the speedy trial period under section 18–1–405(6)(b), and that the speedy trial period was tolled during the prosecution's appeal. Accordingly, the trial court did not violate defendant's statutory speedy trial right by denying his motion to dismiss the charges.

### 2. Constitutional Speedy Trial

¶ 39 Defendant contends that the trial court violated his federal constitutional right to a speedy trial because the prosecution's appeal was frivolous, he repeatedly asserted his right to speedy trial, and he was prejudiced by the approximately two-year delay. We disagree.

¶ 40 The two-year delay between the postconviction court's grant of a new trial and the start of defendant's new trial does not necessarily rise to a level sufficient to presumptively trigger an inquiry into the other *Barker* factors. *See Rios*, 43 P.3d at 733 (two-year delay was not excessive or inordinate). However, we will assume, without deciding, that such a period could trigger an inquiry into the other *Barker* factors. *See Harris*, 15 F.3d at 1560.

¶ 41 Here, the delay was primarily caused by the prosecution's appeal of the new trial order. As discussed above, the appeal was not frivolous and addressed whether the postconviction court properly vacated defendant's convictions for first degree murder and aggravated robbery. Whether the postconviction court properly found an actual conflict in defendant's representation by his first trial attorney presented a significant and substantial issue of law.

¶ 42 As noted, defendant asserted his speedy trial right repeatedly, both in written

form and orally. Even so, defendant did not always cite to the *Barker* factors when asserting his speedy trial right, and he did not include constitutional authority in his initial assertion of his speedy trial right on May 7, 2009. Nor can we locate anywhere in the record where he asked the trial court to make specific findings on the *Barker* factors. Defendant repeatedly relied on his argument that the prosecution's appeal should not have tolled the speedy trial period under section 18–1–405(6)(b), the statute concerning his statutory right to speedy trial. Hence, while defendant's statutory speedy trial argument was readily and repeatedly asserted, the assertion of his constitutional right to speedy trial was more ambiguous.

¶ 43 Finally, and most importantly, we conclude that defendant suffered no prejudice from the delay. While it is true that defendant remained incarcerated during the pendency of the appeal, as well as during the year following its resolution, defendant was charged with first degree murder and was ultimately convicted of accessory to first degree murder. As noted previously, the acceptable length of delay is longer for more serious crimes. *Barker*, 407 U.S. at 530–31, 92 S.Ct. 2182.

¶ 44 We conclude that, on balance, the two-year delay caused by the prosecution's appeal did not violate defendant's state or federal constitutional right to a speedy trial.

### III. *Curtis* Advisement

¶ 45 Defendant asserts that the trial court provided a deficient advisement concerning his right to testify under *People v. Curtis*, 681 P.2d 504 (Colo.1984), because the court did not specifically advise him that the prosecution could introduce evidence of his flight to Mexico and testimony from his prior trial counsel if he took the stand to testify. We decline to address this assertion. *See Moore v. People*, 2014 CO 8, ¶ 3, 318 P.3d 511 (a defendant's challenge to the sufficiency of his *Curtis* advisement is "not subject to review on direct appeal, but only in a post-conviction proceeding").

### IV. Testimony by Prior Trial Counsel

¶ 46 Defendant asserts that the trial court violated his rights to remain silent, to testify, to counsel, and to attorney-client privilege by allowing the prosecution to call his first trial attorney to testify against him at his second trial. Defendant also asserts that the prosecution failed to meet its burden for subpoenaing an attorney to testify under Colo. RPC 3.8(e) and *Williams v. Dist. Court*, 700 P.2d 549 (Colo.1985). We disagree.

### A. Preservation and Standard of Review

¶ 47 The parties disagree on the applicable standard of review. Defendant argues that the trial court's decision to allow his prior attorney to testify should be assessed under structural error principles, seemingly under the assertion that allowing the testimony deprived defendant of his constitutional right to counsel. The People assert that admission of the testimony should be evaluated for an abuse of discretion as an evidentiary ruling. We agree with the People and, because defendant did not properly preserve his arguments based on Colo. RPC 3.8 and *Williams*, we will review those contentions for plain error.

¶ 48 Here, the prosecution called defendant's prior counsel to testify as a rebuttal witness to refute certain parts of defendant's testimony in his case-in-chief. "Rebuttal evidence is admitted at the trial court's discretion." *People v. Welsh*, 80 P.3d 296, 304 (Colo.2003). A court abuses its discretion when making an evidentiary ruling if its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Shifrin*, 2014 COA 14, ¶ 52, 342 P.3d 506.

¶ 49 Where a defendant preserves an evidentiary issue with a contemporaneous objection at trial, "we review for harmless error and consider whether the error, in light of the entire record of the trial, substantially influenced the verdict or impaired the trial's fairness." *People v. Davis*, 312 P.3d 193, 195 (Colo.App.2010). "A showing of prejudice is required even when a defendant is asserting a Sixth Amendment claim challenging an actual intrusion upon

the attorney-client relationship." *People v. Dehmer*, 931 P.2d 460, 464 (Colo.App.1996).

¶ 50 "An issue is unpreserved for review when, among other things, (1) no objection or request was made in the trial court; or (2) an objection or request was made in the trial court, but on grounds different from those raised on appeal." *People v. Ujaama*, 2012 COA 36, ¶ 37, 302 P.3d 296. However, we have discretion to review issues presented for the first time on appeal, particularly if doing so will promote efficiency and judicial economy. *Hinojos–Mendoza v. People*, 169 P.3d 662, 667 (Colo.2007).

¶ 51 When reviewing an unpreserved issue on appeal, we review the challenge for plain error. *People v. Allman*, 2012 COA 212, ¶ 17, 321 P.3d 557 ("Plain error review requires that we determine whether (1) there was an error, (2) the error was 'plain,' or clear and obvious, and (3) the error was substantial, meaning that it so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction.").

¶ 52 Here, although defense counsel objected to defendant's prior attorney testifying at the second trial, he did not object on the grounds of the prosecutor's duties under Colo. RPC 3.8(e) or the law set out in *Williams*. Thus, these issues are unpreserved and we will review them for plain error.

### B. Law

¶ 53 A criminal defendant has the rights to remain silent, to testify in his own defense, and to counsel. U.S. Const. amends. V, VI; Colo. Const. art. II, § 16. "However, a defendant who testifies at trial or at [a] sentencing hearing waives his or her constitutional right to remain silent." *People v. Everett*, 250 P.3d 649, 664 (Colo.App.2010).

¶ 54 The right to counsel encompasses the lawyer's duty of confidentiality, partially codified in section 13–90–107(1)(b), C.R.S.2013, which states that an attorney shall not testify without the consent of the client as to any communication made by the client to the attorney. But the attorney-client privilege applies only to confidential communications made in the course of obtaining legal advice, and only to "statements made in circumstances giving rise to a reasonable expectation that the statements will be treated as confidential." *People v. Tucker*, 232 P.3d 194, 198 (Colo.App.2009) (internal quotation marks omitted). Thus, statements shared with other people are not confidential because such sharing defeats the requirement that the client reasonably expect the communication to be kept confidential. *Id.* at 199.

¶ 55 To further protect the client's right to confidentiality with his attorney, Colo. RPC 3.8(e) states that a prosecutor has a special responsibility not to

subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless the prosecutor reasonably believes: (1) the information sought is not protected from disclosure by any applicable privilege; (2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and (3) there is no other feasible alternative to obtain the information.

¶ 56 In *People v. Koolbeck*, 703 P.2d 673, 676 (Colo.App.1985), a division of this court considered the standard for testimony to be considered material or essential in the context of the speedy trial statute. The division stated that "[t]estimony may be material, or 'essential' to the government's case, even if the government could convict without such testimony. It is not necessary that a witness' testimony be absolutely indispensable to justify a reasonable delay." *Id.* (citation omitted).

¶ 57 When a prosecutor subpoenas an accused's current attorney, the prosecutor must show:

(1) that defense counsel's testimony will be actually adverse to the accused; (2) that the evidence sought to be elicited from the lawyer will likely be admissible at trial under the controlling rules of evidence; and (3) that there is a compelling need for such evidence, which need cannot be satisfied by some other source.

*Williams,* 700 P.2d at 555–56 (footnotes omitted). However, these considerations apply only to current counsel for the defendant and do not apply to subpoenas issued to the defendant's prior counsel. *Id.* at 550, 553 (discharging order directing the district court to show cause why the subpoena served on the defendant's prior counsel should not be quashed).

¶ 58 Additionally, the attorney-client privilege is not absolute. *People v. Trujillo,* 144 P.3d 539, 542 (Colo.2006). The privilege is held by the client, and may be waived by the client, explicitly or impliedly. *Id.* at 542–53. "Any waiver must be demonstrated by evidence that the client, by words or conduct, has expressly or impliedly forsaken his or her claim of confidentiality with respect to the information in question and, thus, has consented to its disclosure." *Id.* at 543 (internal quotation marks omitted).

¶ 59 A client may impliedly waive attorney-client privilege by placing the privileged communications at issue or by disclosing the privileged information to a third party. *Id.* at 543; *see also Morse v. People,* 180 Colo. 49, 55–56, 501 P.2d 1328, 1331 (1972) (holding that the defendant's testimony at a postconviction hearing about his counsel's representation would waive attorney-client privilege and make it proper for counsel to testify to his version of events); *People v. Sickich,* 935 P.2d 70, 73 (Colo.App.1996) ("[B]ecause defendant put in issue what advice he did or did not receive from counsel, as well as his own understanding of the proceedings, he waived the attorney-client privilege with respect to his discussions with counsel on these topics.").

¶ 60 When a defendant testifies in a postconviction hearing as to alleged incompetence in his prior counsel's representation, a defendant opens the door to rebuttal testimony regarding that representation. "The concept of 'opening the door' represents an effort by courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression." *Golob v. People,* 180 P.3d 1006, 1012 (Colo.2008). A party may open the door to otherwise inadmissible evidence, thus allowing the opposing party to then inquire into the previously barred matter. *Id.; People v. Dunlap,* 124 P.3d 780, 799 (Colo.App.2004) ("When the defense opens the door to a topic, the prosecution has a right to explain or rebut any adverse inferences that might have resulted from the questions.").

¶ 61 "Rebuttal evidence is that evidence which tends to contradict the adverse party's case, whether it be challenging the testimony of a specific witness or refuting the adverse party's entire theory or claim." *Welsh,* 80 P.3d at 304. Rebuttal evidence "may take a variety of forms, including 'any competent evidence which explains, refutes, counteracts, or disproves the evidence put on by the other party, even if the rebuttal evidence also tends to support the party's case-in-chief.'" *Id.* (quoting *People v. Rowerdink,* 756 P.2d 986, 994 (Colo.1988)). "In order to present rebuttal evidence, the offering party necessarily must demonstrate that the evidence is relevant to rebut a specific claim, theory, witness or other evidence of the adverse party." *Id.*

## C. Application

¶ 62 Here, the prosecution moved to admit evidence of defendant's flight to Mexico before his first trial. The trial court ruled that the evidence was inadmissible because there were too many possible reasons defendant might have fled the country. Defendant did not testify at his first trial.

¶ 63 When defendant took the stand in the second trial, the trial court determined that defendant's testimony opened the door to evidence of his flight. But the court limited the testimony to evidence of when he fled, where he fled, and how he was returned. The court further ruled that, *if* the defendant testified why he fled, he would open the door for the prosecution to call his former attorney to rebut his explanation. We perceive no abuse of discretion in the trial court's determination.

¶ 64 First, defendant does not elucidate how prior counsel's testimony violated his rights to silence, to counsel, and to testify.

Defendant was given a *Curtis* advisement by the court before he took the stand, he was contemporaneously represented by new trial counsel, and he waived his right to silence when he chose to testify. *See Everett*, 250 P.3d at 664. Because defendant has not fleshed out his constitutional claims, we decline to address these constitutional issues further, except in the context noted below.

¶ 65 Second, after the court's ruling concerning evidence of his flight, defendant testified on direct examination by his attorney that his prior counsel did not properly prepare for his first trial, that counsel met with him very rarely to discuss his case despite continued efforts by defendant to meet and confer, and that he fled to Mexico because his attorney was inadequately prepared for trial and the attorney had advised him to do so. Because defendant testified generally about prior counsel's representation, as well as to specific advice he alleged counsel gave to him, he opened the door to rebuttal evidence regarding these topics.

¶ 66 When prior counsel took the stand, he testified about how he prepared for defendant's case, how often he met with defendant to discuss the case, and he refuted defendant's assertion that he had advised defendant to flee to Mexico. Thus, contrary to defendant's contention, we conclude that counsel's testimony did not exceed the scope of evidence presented in defendant's testimony.

¶ 67 Third, through his testimony, defendant impliedly waived his attorney-client privilege. Defendant's testimony regarding prior counsel's preparation for trial and alleged advice to flee to Mexico impliedly waived attorney-client confidentiality as to these conversations because in disclosing the statements at trial, defendant destroyed any reasonable expectation that the statements would remain confidential. *Trujillo*, 144 P.3d at 542. In addition, defendant put the attorney's statements at issue by testifying at trial that the attorney advised him to flee the country to avoid going to trial. *Id.*; *see also Morse*, 180 Colo. at 55–56, 501 P.2d at 1331; *Sickich*, 935 P.2d at 73.

¶ 68 Because defendant opened the door to rebuttal testimony by his prior counsel and

he waived his attorney-client privilege by putting the attorney's advice at issue and disclosing the communications in open court, we conclude that the trial court did not abuse its discretion when it allowed prior counsel to testify.

¶ 69 Regarding the prosecutor's duties under Colo. RPC 3.8(e), and assuming without deciding that violation of Colo. RPC 3.8(e) would provide grounds to reverse a criminal conviction, we determine that no error resulted from either the prosecutor calling prior counsel to testify or from the trial court permitting the testimony. As discussed above, defendant waived his attorney-client privilege when he took the stand and testified regarding prior counsel's preparation of his case and the alleged advice to flee to Mexico. Thus, counsel's testimony was not protected from disclosure by any applicable privilege and it was reasonable for the prosecutor to believe the testimony was not protected.

¶ 70 The record also indicates that the prosecutor had a reasonable belief that the information sought to be elicited from prior counsel's testimony was essential to the successful completion of the case. The prosecution sought to admit this evidence before defendant's first trial, and it is reasonable to believe the importance of the testimony increased after defendant took the stand and testified to a conflicting version of events. Once defendant testified that his prior trial counsel was incompetent, unprepared, and advised him to flee to Mexico, it was reasonable for the prosecutor to believe that it was essential to the case to rebut this assertion using testimony from prior counsel.

¶ 71 In addition, the prosecution had no other feasible way to present this evidence. Defendant admitted on the stand that he fled to Mexico, so the prosecution no longer needed to establish that fact. The prosecution did, however, need to rebut defendant's testimony that prior trial counsel was incompetent and unprepared for defendant's case, as well as his testimony that he only fled to Mexico upon the advice of his prior counsel. Thus, prior counsel was the only feasible

witness to offer evidence in rebuttal to defendant's testimony.

¶ 72 Hence, we conclude that the prosecutor met the requirements to subpoena a lawyer under Colo. RPC 3.8(e).

¶ 73 Finally, defendant asserts that the prosecution did not meet the factors required under *Williams* to call prior counsel to testify against a former client in a criminal proceeding. We note that the elements laid out in *Williams* apply only when the prosecution subpoenas a defendant's *current* defense counsel. The court in *Williams* specifically stated that the concerns involving subpoenas to defense counsel are not present when the prosecutor subpoenas a defendant's *prior* counsel to testify against the defendant. *Williams*, 700 P.2d at 550, 553.

¶ 74 Because the prosecution here called only defendant's prior counsel to testify, the considerations addressed in *Williams* are inapposite. Thus, there was no error, let alone plain error, under Colo. RPC 3.8(3) or *Williams*.

### V. Conclusion

¶ 75 The judgment is affirmed.

JUDGE RICHMAN and JUDGE ASHBY concur.