21CA1873 Peo v Leary 05-15-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 21CA1873
Elbert County District Court No. 18CR95
Honorable Gary M. Kramer, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christopher Leary,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Martinez* and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 15, 2025

---

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Christopher Leary, appeals the judgment of conviction entered after a jury found her guilty of first degree murder.[1]  We affirm.

## I.     Background

¶ 2     Defendant lived with her girlfriend, C.A.; their infant; and C.A.'s family.  C.A.'s mother, J.A., would often become drunk and violent around C.A. and defendant.

¶ 3     One day, while defendant was at work, an intoxicated J.A. became aggressive around C.A. and their infant.  J.A.'s aggressive behavior continued after defendant returned home.

¶ 4     Defendant "snapped" and confronted J.A. in the hallway.  J.A. went to her bedroom and closed the door.  Defendant kicked open J.A.'s bedroom door, knocked her to the floor, and repeatedly punched J.A.  Defendant briefly stopped, left the room, and retrieved a knife.  Defendant returned to J.A.'s bedroom and stabbed J.A.  Defendant removed the knife, stabbed the knife into

-------------------------

[1] Christopher Leary now goes by the name Claire Shadowdancer and uses she/her pronouns.  Accordingly, we follow the parties' convention using the defendant's preferred pronouns.

the closet door, and walked out the front door. J.A. died at the scene.

¶ 5 A jury convicted defendant of first degree murder.

## II. Analysis

¶ 6 Defendant contends the district court erred (1) by violating her statutory and constitutional rights to a speedy trial; (2) by not correcting alleged prosecutorial misconduct in rebuttal argument when the prosecutor improperly argued that the jury must acquit defendant of first degree murder before considering lesser charges; and (3) because a WebEx audio issue violated her right to a public trial.

### A. Constitutional and Statutory Speedy Trial Rights

#### 1. Standard of Review

¶ 7 We review the district court's denial of a motion to dismiss for a violation of the defendant's speedy trial rights as a mixed question of law and fact. *People v. Curren*, 2014 COA 59M, ¶ 13. We will not disturb the district court's factual findings underlying its speedy trial decision if those findings are supported by the record. *Id.* However, we review de novo the district court's application of those facts to the controlling legal standard. *Id.*

## 2. Additional Background

¶ 8 The prosecution filed charges against defendant in November 2018. Defendant pled not guilty on July 15, 2019, and the trial was originally set for December 2019. A series of continuances occurred over the next two and a half years, many, though not all, the result of the COVID-19 pandemic.

### a. November 2019 Continuance

¶ 9 On November 18, 2019, defendant moved to continue the trial and waived the existing speedy trial deadline. She also agreed to toll the speedy trial deadline until December 2, and the new speedy deadline was set for June 2, 2020. The district court reset the trial for March 30, 2020.

### b. March 2020 — COVID-19 Pandemic Starts

¶ 10 In March 2020, the COVID-19 pandemic impacted the operation of all Colorado courts. Due to public health concerns, the chief justice of the Colorado Supreme Court issued an order suspending all jury trials in the state unless the case had an imminent speedy trial deadline. The chief judge of the Eighteenth Judicial District, where the trial was set, issued an order shutting down juror summonses for trials set through May 15, 2020.

¶ 11   In this case, the court declared two mistrials, over defendant's objections, in June and September 2020.  The mistrials were declared due to COVID-19 concerns and the chief justice's and chief judge's orders.

¶ 12   Significantly, at a hearing on January 5, 2021, the court declared a third mistrial due to the COVID-19 pandemic.  The court stated on the record that, "[i]n a prior conversation with counsel, we have reset this matter, and I just want to make sure that we are all on the same page.  We have . . . reset this matter to commence on May 4th."[2]  Both parties agreed.  Near the end of the hearing, defendant objected to the mistrial, stating that "[t]he defense maintains its objection to the court issuing a mistrial" because it was "a continuing violation of [defendant's] constitutional and statutory right to a speedy trial."

¶ 13   At a status conference on April 1, 2021, the parties discussed the logistics of conducting the trial in May under the required six-foot social distancing guidelines.  Recognizing that it would still not

---

[2] A transcript of the conversation in which the parties agreed to reset the trial to May 4, 2021, is not included as part of the record on appeal.

be possible to conduct the trial with the social distancing requirements, the court advised that it would be forced to declare another mistrial if conditions did not change.

¶ 14    At a status conference on April 16, 2021, the court stated it wanted to confirm the trial dates.  Both parties agreed that the trial had previously been reset to begin on July 7, 2021.  The conversation in which the parties agreed to the July 7 trial date is not included in the record on appeal.

¶ 15    On May 4, 2021, the district court declared another mistrial due to the COVID-19 pandemic.  Defendant objected and requested that the court dismiss the case because the July 2021 trial date would violate defendant's right to speedy trial.  The district court denied the objection.

¶ 16    In July 2021, the COVID-19 restrictions were lifted, and defendant's case proceeded to trial.

### 3.    Discussion

¶ 17    Defendant challenges whether the district court violated both her constitutional and statutory rights to a speedy trial.  We first analyze her constitutional contention, then turn to her statutory contention.

### a. Constitutional Speedy Trial Right

¶ 18    Defendant contends the district court violated her constitutional right to a speedy trial under both the United States and Colorado Constitutions because (1) the delay between her arrest and trial was presumptively prejudicial, and (2) the public health crisis resulted in more onerous jail conditions. We discern no constitutional speedy trial violation.

¶ 19    The United States and Colorado Constitutions guarantee all criminal defendants the right to a speedy trial. U.S. Const. amend. VI; Colo. Const. art. II, § 16; *Moody v. Corsentino*, 843 P.2d 1355, 1363 (Colo. 1993). We apply a four-factor balancing test to assess whether a defendant's constitutional speedy trial rights were violated: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. *Moody*, 843 P.2d at 1363 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)); *see also People v. Chavez*, 779 P.2d 375, 376 (Colo. 1989) (noting the *Barker* test also governs the determination of a speedy trial claim under the Colorado Constitution). The defendant bears the burden of establishing that the defendant's

constitutional speedy trial rights have been denied. *Moody*, 843 P.2d at 1363.

¶ 20 Applying the *Barker* factors, we conclude that there was no violation of the defendant's constitutional speedy trial right.

¶ 21 Despite the considerable length of the delay here, defendant requested the first continuance, and it is thus attributable to her. *See People v. Glaser*, 250 P.3d 632, 647 (Colo. App. 2010) (attributing delay caused by defense counsel's tactical decision to seek a continuance to the defendant).

¶ 22 Furthermore, courts across the country have considered and rejected assertions of constitutional speedy trial error where the COVID-19 pandemic was the source of the trial's delay. *See United States v. Keith*, 61 F.4th 839, 853 (10th Cir. 2023) (holding that COVID-19-related delays are a "truly neutral justification — not favoring either side"); *United States v. Walker*, 68 F.4th 1227, 1238 (9th Cir. 2023) ("The pandemic, not the prosecution, caused the delay."); *United States v. Pair*, 84 F.4th 577, 584-85 (4th Cir. 2023) (recognizing that the pandemic was a valid and justifiable reason for delaying trial).

¶ 23    Therefore, we reject her contention that her constitutional speedy trial right was violated because a portion of the delay was attributable to defendant, and the pandemic was a valid and justifiable reason for delaying a trial.

### b.    Statutory Speedy Trial Right

¶ 24    But defendant also contends the district court violated her statutory speedy trial right by declaring a mistrial on January 5, 2021, and resetting the trial for May 4, 2021, in excess of the three months allowed by Colorado's speedy trial statute. *See People v. Sherwood*, 2021 CO 61, ¶ 3. Under these circumstances, we perceive no abuse of discretion.[3]

¶ 25    Colorado's speedy trial statute requires that a defendant be brought to trial within six months from the entry of a not guilty plea. § 18-1-405(1), C.R.S. 2024. This deadline may be tolled in some circumstances, including, as relevant here, for the "period of delay caused by any mistrial, not to exceed three months for each

---

[3] Defendant's opening brief notes that she objected to the mistrial orders but that "even if the court's mistrial orders were sound, the trial court exceeded the speedy trial statute's parameters" by setting trial for May 2021. Because defendant developed no argument beyond this point, we decline to consider it. *See Am. Fam. Mut. Ins. Co. v. Am. Nat'l Prop. & Cas. Co.*, 2015 COA 135, ¶ 42.

mistrial." § 18-1-405(6)(e); *see* Crim. P. 24(c)(4); *Sherwood*, ¶¶ 1, 41 (explaining that a tolled period acts as a "time-out" on the speedy trial clock).

¶ 26 At the January 5, 2021, hearing, both parties confirmed that they had earlier agreed to the May trial date; however, this agreement was not included as part of the record on appeal. At the time, defendant made only a general objection to the May trial date. As a result, defendant's claim of error relies on the absence of any record support explaining why the district court reset the case outside of the period authorized by statute. Thus, defendant's argument asks us to assume the district court committed error while omitting from the record the conversation in which the parties discussed the May 2021 trial date. This we will not do.

¶ 27 It is the appellant's duty to designate those portions of the trial record and transcripts which are necessary for review on appeal.[4]

---

[4] We note that defendant had ample opportunity to supplement the record on appeal to include the omitted transcript. Indeed, defendant asked for — and was fully or partially granted — authorization to supplement the record on numerous occasions. However, despite multiple requests to supplement the record, defendant does not appear to have asked for leave to provide the missing transcript of the conversation concerning the May 2021 trial date.

*See* C.A.R. 10(d); *see also Northstar Project Mgmt., Inc. v. DLR Grp., Inc.*, 2013 CO 12, ¶ 16; *Till v. People*, 581 P.2d 299, 299 (Colo. 1978). Because defendant failed to provide a complete record on appeal, we must presume that the district court's findings and decision to reset the trial for May 2021 are supported by the evidence. *See People v. Morgan*, 606 P.2d 1296, 1300 (Colo. 1980).

¶ 28    In the absence of any evidence in the record to the contrary, we presume that the district court acted in accordance with the law when it reset defendant's trial to May 2021. *See People v. Bishop*, 7 P.3d 184, 188 (Colo. App. 1999) (holding that, when a defendant fails to provide those portions of the record necessary to substantiate their claim, "appellate courts must presume that the actions of the trial court were correct").

## B.    Prosecutorial Misconduct

¶ 29    Next, defendant contends that the prosecution committed prosecutorial misconduct when it erroneously stated during rebuttal closing that the jury was supposed to consider the lesser included offenses, and the court erred by failing to correct it. We conclude that while error occurred, it does not rise to the level of plain error.

### 1. Standard of Review

¶ 30    When reviewing a claim of prosecutorial misconduct, we consider whether the prosecutor's conduct was improper and whether any impropriety requires reversal. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). When, as here, a claim of error is not preserved by a contemporaneous objection, we may reverse only if plain error occurred. *Hagos v. People*, 2012 CO 63, ¶ 14. An error is plain if it is obvious, substantial, and so undermined the fundamental fairness of a trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Dominguez-Castor*, 2020 COA 1, ¶ 85. Prosecutorial misconduct constitutes plain error only if it is "flagrantly, glaringly, or tremendously improper." *Id.* at ¶ 86 (citation omitted).

### 2. Additional Background

¶ 31    Prior to closing arguments, the court instructed the jury on the elements of first degree murder, second degree murder, and manslaughter. The court also provided the jury with a correct "soft transition" bridge instruction:

> If you are not satisfied beyond a reasonable
> doubt that [the defendant] is guilty of the
> offense of Murder in the First Degree, [she]

11

may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged if the evidence is sufficient to establish [her] guilt of the lesser offense beyond a reasonable doubt.

¶ 32      In its closing argument, the prosecution argued that defendant acted consciously and deliberately and that therefore she was guilty of first degree murder.  Meanwhile, the defense primarily argued that the evidence demonstrated only that the defendant could be found guilty of second degree murder or manslaughter.

¶ 33      The prosecution then addressed the court's bridge instruction during its rebuttal closing:

> This instruction, we call it a "lesser-bridge instruction," and it's the instruction right after murder in the first degree.  And what it explains is that you *only* go on to consider lesser offenses, like second degree murder, if you are not satisfied beyond a reasonable doubt that [the defendant] is guilty of the offense of murder in the first degree.  So you don't even consider second degree or provocation or manslaughter *until* you are satisfied that [she] did not commit murder in the first degree beyond a reasonable doubt.

(Emphasis added.)

12

¶ 34    While the statements misstated Colorado law, the prosecution did not refer again to the bridge instruction, and defense counsel did not contemporaneously object to the prosecution's statement.

### 3.    Discussion

¶ 35    Defendant asserts the prosecution engaged in misconduct because its statement that "you don't even consider second degree . . . or manslaughter until you are satisfied that [the defendant] did not commit murder in the first degree beyond a reasonable doubt," essentially told the jurors that they must acquit the defendant of first degree murder before considering any of the lesser charges.  Because Colorado is a "soft transition" state, we agree that the prosecutor's statement constituted error.  *See People v. Vasquez*, 2022 COA 100, ¶ 66 (noting that the jury does not have to acquit a defendant of the greater offense before considering any lesser included offenses).  This does not end our analysis, however.  We turn next to whether the error was substantial.

¶ 36    We conclude the error was not reversible under the plain error standard because it was not so substantial as to undermine the fundamental fairness of the trial as to cast serious doubt on the

reliability of the judgment of conviction. *See Dominguez-Castor*,
¶ 85.

¶ 37    The statement was isolated in nature, it substantially tracked
the language of the instruction, and the prosecutor did not repeat
the statement during the trial. *See People v. Estes*, 2012 COA 41,
¶ 41 (discerning no prosecutorial misconduct when the prosecutor's
comment was made only at the outset of closing argument and was
not repeated during trial); *People v. Munsey*, 232 P.3d 113, 124
(Colo. App. 2009) (noting that when there are no other allegations of
prosecutorial misconduct during closing, it is unlikely that an
isolated portion of closing argument substantially influenced the
verdict). The district court also provided the jury with the proper
bridge instruction before deliberation. *See People v. Payne*, 2019
COA 167, ¶¶ 47-49 (noting error was harmless in part because the
court properly instructed the jury).

¶ 38    Moreover, the weight of the evidence supporting the jury's first
degree murder verdict was overwhelming. *See People v. Garcia*,
2023 COA 58, ¶ 60 (prosecutorial misconduct in closing did not
warrant reversal under plain error standard when, among other
things, overwhelming evidence supported the guilty verdict). At

trial, when asked if her intention was to kill the victim, defendant responded, "Yes." C.A. described the assault, noting that once defendant stopped attacking her mother, defendant left the bedroom and grabbed the knife. C.A. then recounted how the defendant returned to her mother's bedroom and stabbed her mother in the throat.

¶ 39 Indeed, defendant's own statements prior to trial also support the overwhelming nature of the evidence. After being taken into custody, defendant told investigators:

- "In my head I've already gone too far . . . . So in my head if I'm gonna go to jail or prison or whatever I might as well as do it for something that's worth it."

- "So that's when I grab my knife, [C.A.'s] still trying to stop me."

- "And when I finally get [C.A.] out of the way that's when I'm in the room and I just stab her in the neck."

¶ 40 Defendant further admitted that the victim was not armed at the time of the incident and that she did not withdraw the knife from the victim's neck until she could hear the victim "choke on her own blood" because she "thought that would be enough."

15

¶ 41    For these reasons, we conclude that the error did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.

## C.    Public Trial

¶ 42    Finally, defendant argues that she was denied her right to a public trial because an audio issue prevented WebEx viewers from hearing the testimony of two witnesses.  We discern no error.

### 1.    Standard of Review

¶ 43    We review a district court's decision to close the courtroom as a mixed question of law and fact.  *People v. Jones*, 2020 CO 45, ¶ 14.  Accordingly, "we accept the trial court's findings of fact absent an abuse of discretion, but we review the court's legal conclusions de novo."  *Id.* (quoting *People v. Hassen*, 2015 CO 49, ¶ 5).  The erroneous denial of a public trial constitutes structural error.  *Hassen*, ¶ 7 (citing *Hagos*, ¶ 10).[5]

---

[5] Because we conclude that the audio issue did not constitute a closure of the courtroom, we decline to address the parties' arguments concerning waiver and plain error review.

### 2.    Discussion

¶ 44    On the fourth day of the trial, the court heard testimony from two individuals: Deputy Joshua Bjork, one of several officers dispatched to the scene, and Moriah Bargas, the crime scene investigator.  After both witnesses had testified, the prosecution informed the court that viewers on WebEx said that they could not hear the morning's testimony because the proceedings had been muted.  The problem was resolved, and the proceedings resumed without further incident.  Defendant did not object or seek any remedy for the audio issue at that time.

¶ 45    According to defendant, the inadvertent muting of the proceedings was tantamount to a court-ordered closure; thus, the court was obligated to make findings as required by *Waller v. Georgia*, 467 U.S. 39, 44-47 (1984).[6]

---

[6] Under *Waller v. Georgia*, 467 U.S. 39, 44-47 (1984), a district court is obligated to make the following findings on the record when it orders a court closure to the public: (1) the party seeking to close the proceeding must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the court must consider reasonable alternatives to closing the proceeding; and (4) the court must make findings adequate to support the closure.

¶ 46 But there was no court-ordered closure of the courtroom. Despite the problems with the audio during a portion of the livestream, the courtroom was open to any member of the public who wanted to attend the trial in person. Indeed, the record indicates that the prior COVID-19 restrictions were lifted before the trial began, and defendant does not argue that the courtroom was not open to members of the public. That leaves only the issue of technical difficulties for those watching the livestream.

¶ 47 Other divisions of this court have determined that technical difficulties with livestreaming courtroom proceedings do not result in a partial closure when the courtroom remains physically open to the public. *See People v. Sloan*, 2024 COA 52M, ¶¶ 2, 18, 22 (holding that a defendant's public trial right was not violated when the livestream experienced technical difficulties); *People v. Gonzalez-Quezada*, 2023 COA 124M, ¶ 60 (holding that the exclusion of a single, intrusive, remote observer did not violate the defendant's public trial right).

¶ 48 Because the courtroom remained open and any member of the public was free to attend the trial in person, the courtroom was not closed, notwithstanding the technical difficulties.

18

## III. Disposition

¶ 49   The judgment is affirmed.

JUSTICE MARTINEZ and JUDGE TAUBMAN concur.