The PEOPLE of the State
of Colorado, Plaintiff

v.

Timothy TRUJILLO, Defendant.

No. 05SA318.

Supreme Court of Colorado,
En Banc.

Oct. 2, 2006.

David S. Kaplan, Colorado State Public Defender Kevin Pauly, Deputy Public Defender, Denver, Colorado, Attorneys for Petitioner Cassandra Gomez.

Mitchell R. Morrissey, District Attorney, Second Judicial District, Evan W. Jones, Deputy District Attorney, Denver, Colorado, Attorneys for Plaintiff the People of the State of Colorado.

David F. Vela, Arvada, Colorado, Attorney for Respondent-Defendant Timothy Trujillo.

Justice EID delivered the Opinion of the Court.

In this original proceeding under C.A.R. 21, we review the trial court's order requiring Petitioner Cassandra Gomez's criminal defense counsel to produce portions of his case file for *in camera* review. The trial court based its ruling on its belief that Gomez impliedly waived the attorney-client privilege when she entered into a plea agreement. We issued a rule to show cause. Because we find that no implied waiver took place, we now make the rule absolute.

## I. FACTS AND PROCEDURAL HISTORY

On December 8, 2003, an employee of an armored vehicle company was assaulted and robbed after picking up money and receipts from a restaurant in Denver, Colorado. Following an investigation, Petitioner Cassandra Gomez was charged with aggravated robbery and theft. After her arrest, Gomez provided oral and written statements to the Denver Police Department and the Federal Bureau of Investigation on at least three occasions. None of those statements mentioned the defendant here, Timothy Trujillo. Gomez and the district attorney subsequently engaged in plea negotiations regarding the charges, and the district attorney expressed interest in working with Gomez to locate other parties involved in the crime.

Based on statements from Gomez, police charged Daniel Dominguez with crimes relating to the robbery. Dominguez also engaged in plea discussions with the district attorney, which resulted in Dominguez providing an audiotaped and videotaped statement in May 2004. Dominguez identified Trujillo as one of the individuals who participated in the robbery. Dominguez has since retracted portions of his statement, including the identification of Trujillo, and his plea agreement was revoked.

Gomez also eventually entered into a plea agreement, under which she agreed to provide complete and truthful information to the district attorney regarding the robbery, and to testify against others involved in the crime, in exchange for pleading guilty to a

lesser charge and receiving a sentence recommendation of eight years. Pursuant to that agreement, on July 1, 2004, Gomez provided a detailed videotaped statement regarding the robbery, and disclosed the names of others involved in committing the robbery, including Trujillo. Shortly after providing her videotaped statement, Gomez pleaded guilty to attempted aggravated robbery. Gomez later was sentenced to sixteen years of imprisonment with the understanding that the district attorney would stipulate to a reduced sentence of eight years following her trial testimony against Trujillo and other defendants.

On October 13, 2005, counsel for Trujillo served a subpoena duces tecum on the public defender representing Gomez, Kevin Pauly. The subpoena sought a copy of Pauly's file regarding his representation of Gomez. Trujillo's counsel intended to obtain documents showing any inconsistencies between what Gomez told Pauly and what she said in her recorded statement; documents regarding the plea negotiations among Gomez, Pauly, and the district attorney; and documents showing when and how Pauly and Gomez learned of Dominguez's statement. Particularly, Trujillo's counsel wanted to determine whether Gomez had an opportunity to review Dominguez's May 2004 statement before providing her own statement in July 2004 and wanted to locate information that might help Trujillo challenge Gomez's credibility.

Pauly filed a motion to quash the subpoena duces tecum, arguing that the requested information was protected by the attorney-client privilege. The trial court held a hearing on Pauly's motion on October 17, 2005. At the hearing, counsel for Trujillo argued that Gomez had waived the attorney-client privilege by disclosing information to a third party (the district attorney) and by agreeing to provide "truthful" testimony as part of her plea agreement, thereby placing her credibility at issue. Apparently agreeing with Trujillo's arguments, the court ordered Pauly to produce the requested materials for *in camera* review within forty-eight hours. Pauly then filed a second motion to quash—in effect, a motion for reconsideration—on October 19, 2005. The trial court stayed its prior order requiring *in camera* review, and held a second hearing on the motions to quash on October 25, 2005.

■ At the October 25 hearing, the trial court made detailed findings regarding the nature of the documents being requested and the reasons for their *in camera* production, as required by this Court's decision in *People v. Madera*, 112 P.3d 688 (Colo.2005). In *Madera*, we announced the following six-part framework that a trial court must apply before requiring *in camera* inspection of an attorney's case file:

> Before granting a request for *in camera* inspection of an attorney's case file, the trial court must determine
>
> (1) as precisely as possible, the information sought to be discovered,
>
> (2) whether the information is relevant to a matter at issue,
>
> (3) whether the information could be obtained by any other means,
>
> (4) whether the information is privileged,
>
> (5) if it is privileged, whether the privilege has been waived,
>
> (6) if it is privileged, but has been waived, either explicitly or impliedly, the scope of the waiver.

*Id.* at 691.

In applying these factors, the trial court first defined the scope of the documents requested by Trujillo to include: (1) documents regarding negotiations between Gomez, her counsel, and the district attorney, with "negotiations" defined to include discussions between only Gomez and Pauly; and (2) documents reflecting when Gomez or her counsel became aware of Dominguez's statement. Second, the trial court concluded that the requested documents were relevant to the case, and in particular, relevant to Gomez's credibility. Third, the trial court found that Trujillo had exhausted other means of obtaining the requested documents. Fourth, the trial court noted that the requested documents are privileged.

With regard to the fifth factor, the court below noted that an implied waiver of the attorney-client privilege may be found when

the defendant places the allegedly privileged communication at issue in the litigation. The court then held that Gomez had placed her attorney-client communications at issue by negotiating and entering into a plea agreement with the prosecution. Specifically, the court held that the waiver extended to negotiations regarding the stipulation, the sentence to which she agreed, and the information she told her attorney when she learned of Dominguez's statement:

My finding is that by accepting and negotiating this disposition with the prosecution, Ms. Gomez has done just that [placed the attorney-client communications at issue], so I find a waiver of the privilege as to the negotiations regarding the stipulations, as I've stated, and the sentence accepted by Ms. Gomez as well as the information relating to when she became aware of Mr. Dominguez' prior statement, if at all, and the content of that statement, the content of his statement, when she was aware of it and whether it was prior to the time she made her own statement.

Finally, the trial court concluded that the scope of Gomez's waiver was limited to the documents defined in the first factor.

At the conclusion of the October 25 hearing, having concluded that the *Madera* test for *in camera* review was satisfied, the trial court again ordered Pauly to produce portions of his file for *in camera* review. Pauly, on behalf of himself and Gomez, challenged the trial court's order by filing a C.A.R. 21 petition with the Court, and we issued a rule to show cause. We now make the rule absolute.

## II. ANALYSIS

■ The court below found, and we agree, that the documents at issue are protected by the attorney-client privilege. "The attorney-client privilege applies to confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations." *Madera*, 112 P.3d at 690 (citations and internal quotations omitted). Colorado has codified the attorney-client privilege as follows:

An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment. . . .

§ 13–90–107(1)(b), C.R.S. (2006). Thus the privilege is held by the client and may be waived only by the client. *Losavio v. Dist. Court*, 188 Colo. 127, 133, 533 P.2d 32, 35 (1975). The question we must resolve is whether, notwithstanding those protections, Gomez impliedly waived the attorney-client privilege when she entered into a negotiated plea agreement with the district attorney and promised to provide truthful testimony as part of that agreement.

A. *In camera Review of Privileged Documents*

■ The attorney-client privilege is not absolute. There are recognized exceptions to the privilege, and the privilege may be waived in certain circumstances. But the exceptions are simply that—exceptions. The burden of establishing a waiver or an exception lies with the party seeking to overcome the privilege. *Wesp v. Everson*, 33 P.3d 191, 198 (Colo.2001). In situations where it is unclear whether the privilege has actually been waived or an exception applies, a trial court may order *in camera* review to assess the nature of the privileged documents. *See, e.g., Caldwell v. Dist. Court*, 644 P.2d 26, 33 (Colo.1982).

■ A trial court should be hesitant to review the contents of an attorney's case file, however, because of the importance of the privilege involved. *in camera* disclosure to the court is still a form of disclosure. The court's review could have a chilling effect on attorneys and their clients, especially if *in camera* review occurred frequently or was easily obtained. *Madera*, 112 P.3d at 691.

This Court recently considered the circumstances under which a trial court is permitted to order counsel for a criminal defendant to produce his file for *in camera* review. In *People v. Madera*, we reviewed a trial court order requiring defendant Madera's former criminal defense counsel to produce his entire file for the trial court's *in camera* review. *Id.* at 689. We ultimately concluded

that *in camera* review of the attorney's file was premature in that case. *Id.* at 692.

In reaching our conclusion, we noted that [t]he decision of a trial court to conduct an *in camera* review of a defense counsel's case file has serious implications and should be undertaken only in the clearest of cases, when the information sought to be discovered is well defined and all other reasonable means of discovering the information have been exhausted.

*Id.* at 689. Accordingly, we articulated a six-part test, set forth above, which governs a trial court's *in camera* review of an attorney's file. *Id.* at 691. At issue in this case is the court's application of the fifth *Madera* factor—namely, whether the attorney-client privilege was waived by Gomez when she entered into the plea agreement and promised, as part of that agreement, to provide truthful testimony.

B. *Implied Waiver of the Attorney–Client Privilege*

■ The attorney-client privilege may be waived explicitly or, on occasion, impliedly. "Any waiver must be demonstrated by evidence that the client, by words or conduct, has expressly or impliedly forsaken his or her claim of confidentiality with respect to the information in question and, thus, has consented to its disclosure." *People v. Sickich*, 935 P.2d 70, 73 (Colo.App.1996). There is no suggestion here that Gomez explicitly waived the privilege, so our analysis focuses on whether Gomez impliedly waived the privilege by entering into a plea agreement that obligated her to provide truthful testimony.

We previously have found implied waivers of the privilege in two situations: when a client asserts a claim or defense that focuses on advice given by the attorney, *see, e.g., Morse v. People*, 180 Colo. 49, 501 P.2d 1328 (1972); and when a client discloses privileged communications to a third party. *See, e.g., Lanari v. People*, 827 P.2d 495, 500 (Colo. 1992). In this case, we conclude that Gomez did not impliedly waive the attorney-client privilege because she neither placed privi-

leged communications at issue by negotiating a plea agreement in which she agreed to testify truthfully, nor did she disclose privileged information to a third party.[1]

1. *Placing Privileged Communications at Issue*

■ The first way in which a client might impliedly waive the attorney-client privilege is to place privileged communications at issue. The rationale for an implied waiver in those circumstances is that the law will not permit a client to "use as a sword the protection which is awarded him as a shield." *Mountain States Tel. & Tel. Co. v. DiFede*, 780 P.2d 533, 544 (Colo.1989). In other words, if a client asserts a claim or defense that depends upon privileged information, she cannot simultaneously use the privilege to keep that information from the opposing party.

■ In order to waive the privilege in this manner, the client must commit some "affirmative act" that places the privileged information at issue. *Madera*, 112 P.3d at 691–92. Accordingly, we have held in several cases that, where a client asserts a defense or a claim based on the propriety of advice given by her attorney, she waives the privilege with respect to that advice. *See, e.g., Stone v. Satriana*, 41 P.3d 705, 710 (Colo. 2002) ("When a client brings a malpractice allegation, the attorney-client privilege is deemed impliedly waived."); *Morse*, 180 Colo. at 54, 501 P.2d at 1331 (holding that, if a client testifies to the alleged incompetence of counsel, the client waives the attorney-client privilege); *Sickich*, 935 P.2d at 73 ("[B]ecause defendant put in issue what advice he did or did not receive from counsel, as well as his own understanding of the proceedings, he waived the attorney-client privilege with respect to his discussions with counsel on these topics.").

Similarly, in *Madera*, a criminal defendant entered a plea agreement but then later sought to withdraw his plea, claiming that he did not understand the implications of his

1. Notably, the district attorney has conceded that the trial court erred, and that the motions to quash should have been granted.

plea because of ineffective assistance of counsel. *See* 112 P.3d at 689. We held, on those facts, that Madera waived the attorney-client privilege with respect to communications with his counsel regarding the sentence he would face by pleading guilty. *Id.* at 691.

In this case the trial court held, and Trujillo argues to this Court, that Gomez took an affirmative act sufficient to impliedly waive the attorney-client privilege when she entered into a plea agreement with the district attorney and promised to provide truthful testimony. Trujillo first contends that, simply by entering into the plea agreement, Gomez waived the attorney-client privilege with respect to all previously confidential statements that related to the subject matter of her plea agreement. We are aware of no authority, nor has Trujillo identified any such authority, that would support the proposition that a defendant waives the attorney-client privilege simply by entering into a plea agreement.

In fact, our decision in *Madera* supports a contrary proposition. In *Madera*, we found that the defendant had put the advice he received from his attorney at issue by claiming ineffective assistance of counsel with regard to his plea agreement. 112 P.3d at 692. The key fact in *Madera*, however, was that he challenged the adequacy of the advice that he had received in conjunction with the plea agreement. *Id.* at 689. We in no way suggested that simply entering into the plea agreement waived the privilege between Madera and his counsel. In this case, unlike the defendant in *Madera*, Gomez has not challenged the propriety of her plea nor the adequacy of her representation in any way. We therefore hold that she did not impliedly waive the attorney-client privilege simply by entering into a plea agreement.

■ Nor are we persuaded by Trujillo's second argument namely, that Gomez impliedly waived the attorney-client privilege because she put her credibility at issue by agreeing to provide "truthful" testimony. We hold that agreeing to provide truthful testimony in conjunction with a plea agreement does not effect a waiver of the attorney-client privilege. Indeed, to hold otherwise could have unintended consequences that could dramatically diminish the protections of the attorney-client privilege.

Every witness who offers trial testimony under oath has an obligation imposed by law to tell the truth. *See* § 18-8-502, C.R.S. (2006) (defining the crime of perjury in the first degree). In light of this legal obligation, if we were to conclude that Gomez waived the attorney-client privilege by agreeing to provide truthful testimony, our decision would be tantamount to holding that every witness waives the attorney-client privilege with respect to all communications with his attorney about the subject of his testimony. We cannot countenance such a broad interpretation of implied waiver of the attorney-client privilege.

■ We therefore hold that neither the fact that Gomez entered into the plea agreement nor the fact that she promised to provide truthful testimony constitutes an affirmative act that impliedly waived the attorney-client privilege.

### 2. *Disclosing Privileged Communications to a Third Party*

The second way in which a client might impliedly waive the attorney-client privilege is to disclose privileged communications to a third party. *See, e.g., Wesp,* 33 P.3d at 198 (noting that "if a communication to which the privilege has previously attached is subsequently disclosed to a third party, then the protection afforded by the privilege is impliedly waived"); *Lanari,* 827 P.2d at 500 (holding that statements made initially in confidence to an attorney lose the shield of the attorney-client privilege if the statements are subsequently disclosed to third parties); *Fearnley v. Fearnley,* 44 Colo. 417, 430, 98 P. 819, 824 (1908) (citing *Hunt v. Blackburn,* 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488 (1888)) (finding that a client's disclosure of information protected by the attorney-client privilege waives the privilege); *see also People v. Medina,* 72 P.3d 405, 408 (Colo.App. 2003), *cert. denied* (June 30, 2003) (holding that, where a client authorized his attorney to deliver to his victim's family a letter containing inculpatory statements, he waived the

privilege with respect to the letter). There was no such disclosure to a third party here.

It is true that, as Trujillo argued below, Gomez gave recorded statements to a third party—that is, to the prosecution. Nowhere, however, does Trujillo argue that the statements given by Gomez to the prosecution contained privileged information. Nor does the record before us indicate that Gomez's statements to the prosecution contained any privileged information.[2]

Rather, it appears that Gomez's statements consisted of only her factual assertions regarding the alleged robbery at issue. Such statements of fact are not protected by the attorney-client privilege. *See Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo.2000) (noting that "the privilege protects only the communications to the attorney; it does not protect any underlying and otherwise unprivileged facts that are incorporated into a client's communication to his attorney"); *see also State v. Dixon*, 668 S.W.2d 123, 126 (Mo.Ct. App.1984) ("Where a party does not testify as to privileged communications with his attorney, he does not waive the privileged character of the communications."). Here, the record shows that the statements made by Gomez to the prosecution contained only factual assertions regarding the underlying crime charged and contained no privileged communications. Because Gomez did not disclose any privileged information to the prosecution by virtue of giving a statement about the alleged robbery, her statement did not waive the attorney-client privilege. *See, e.g., People v. Lynch*, 23 N.Y.2d 262, 296 N.Y.S.2d 327, 244 N.E.2d 29, 35 (1968) ("[T]estimony about an event, even when the witness is protected by immunity, should not be construed as a waiver of the privilege, merely because the subject matter of the testimony may also have been discussed in the privileged communication."); *State v. Hollins*, 184 N.W.2d 676, 678–79 (Iowa 1971) (quoting from, and holding in accord with, *People v. Lynch*).

 By issuing the subpoena duces tecum to Pauly, Trujillo hopes to discover whether Gomez made statements to Pauly that do not appear in, or seem to contradict, her statements made to the prosecution. In this manner, Trujillo seeks precisely the kind of information protected by the attorney-client privilege; that is, he seeks to require Pauly to disclose what Gomez told him. Trujillo's attempt to gain access to such information where Gomez has not waived the privilege flies in the face of the traditional notion of the protections afforded by the attorney-client privilege:

> The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Upjohn Co. v. United States*, 449 U.S. 383, 396, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (citation omitted). Just as the client cannot be compelled to testify about what she told her attorney, the attorney cannot be compelled to produce documents from his file that reflect what the client told him.

In sum, Gomez neither placed any privileged communications at issue nor disclosed any privileged communications to a third party. We thus conclude that the trial court erred as a matter of law when it found that Gomez impliedly waived the attorney-client privilege. There having been no waiver of the privilege, the trial court's order for *in camera* review of Pauly's file was unwarranted. The motions to quash filed by Pauly should have been granted.

### III. *CONCLUSION*

For the foregoing reasons, we now make absolute the rule to show cause. The trial court is ordered to vacate its prior rulings on the motions to quash requiring *in camera* review, and to grant the motions to quash the subpoena duces tecum served on Kevin Pauly.

---

**2.** Significantly, the court below made no such finding, and rested its decision on the "at issue" rationale.