The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 12, 2026

**2026COA12**

**No. 24CA0131, *People v. Palermo* — Criminal Law — Court Appointed Counsel — Request for Substitute Counsel — *Bergerud* Hearing**

A division of the court of appeals considers whether a hearing on a criminal defendant's request for substitute counsel under *People v. Bergerud*, 223 P.3d 686 (Colo. 2010) (*Bergerud* hearing), must be heard by a judge other than the one presiding over the case. The division concludes that nothing in *Bergerud* requires as much and that the judge presiding over the case may, but is not required to, oversee a *Bergerud* hearing.

The division thus rejects the defendant's contentions that the district court erred by having the same judge preside over the *Bergerud* hearing and the sentencing hearing, failing to advise him that he risked waiving his attorney-client privilege during the *Bergerud* hearing, and relying on certain information in imposing

his sentence. The division also declines to consider the defendant's challenge to the validity of his plea agreement.

Accordingly, the division affirms the sentence imposed by the district court.

COLORADO COURT OF APPEALS　　　　　　　　　　**2026COA12**

Court of Appeals No. 24CA0131
Huerfano County District Court Nos. 22CR44 & 22CR45
Honorable J. Clay McKisson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Anthony Palermo,

Defendant-Appellant.

SENTENCE AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Tow and Lum, JJ., concur

Announced March 12, 2026

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Rachel C. Funez, Alternate Defense Counsel, Glenwood Springs, Colorado, for Defendant-Appellant

¶ 1 Defendant, Anthony Palermo, appeals the sentence imposed after he pleaded guilty to harassment and assault. We affirm.

## I. Background

¶ 2 In 2023, Palermo entered into a plea agreement to resolve charges from two cases in which he was charged with stalking, harassment, sexual assault on a child by one in a position of trust, and sexual assault. In exchange for dismissal of these charges, Palermo pleaded guilty to harassment and an amended count of second degree assault, a class 4 felony. Following a hearing (plea hearing), the district court accepted Palermo's guilty plea.

¶ 3 Three months later, the court held a hearing on Palermo's asserted conflict with his court-appointed counsel (*Bergerud*[1] hearing), immediately followed by a sentencing hearing. At the *Bergerud* hearing, the court determined that no conflict existed between Palermo and his counsel and explained that Palermo could either continue with his existing, court-appointed counsel or

---

[1] A court holds a *Bergerud* hearing when a defendant objects to court-appointed counsel without providing a sufficiently detailed motion on which the court can base its decision whether to appoint substitute counsel. *See People v. Bergerud*, 223 P.3d 686, 694-95 (Colo. 2010).

proceed without counsel. Palermo chose to continue with counsel for sentencing. During the sentencing hearing, the court, noting Palermo's criminal history, including a previous sexual offense involving a minor, sentenced Palermo to fifteen years in prison for second degree assault and a concurrent four-month jail term for harassment.

¶ 4 Palermo contends that his sentence should be reversed because the district court erred by (1) holding the *Bergerud* hearing without having a different judge preside over the hearing and without advising him that he was waiving his attorney-client privilege; (2) sentencing him without affirming that he understood and agreed to the presumptive range and crime of conviction implicated by his plea agreement; and (3) relying on insufficient and inaccurate information in imposing the sentence. We address each contention in turn.

II. *Bergerud* Hearing

A. Additional Facts

¶ 5 Two months after Palermo entered his plea, he filed a motion asserting that he had a conflict with his counsel and wanted to fire

2

her.  Palermo also said that his counsel coerced him into accepting an inappropriate plea agreement.

¶ 6     At the *Bergerud* hearing, outside the presence of the prosecution and the public, the district court heard argument from Palermo and his counsel on Palermo's motion.  The court asked Palermo if he was requesting a new attorney.  Palermo said he didn't feel like his counsel's representation had been effective or that he had "ever been given an opportunity to even voice [his] side of the story."  He asked the court to allow him to "defend [him]self pro se and afford [him] a legal team . . . to advise him."

¶ 7     Defense counsel said that she had been in consistent communication with Palermo and had previously discussed the plea agreement with him, but Palermo had only told her that day that he didn't feel he'd received enough time to consider the plea agreement.  Counsel said she would have requested a continuance if Palermo had informed her that he wasn't ready to accept the plea.

¶ 8     The court found that Palermo failed to establish good cause for a substitution of counsel and that Palermo wasn't "coerced in any way" to enter into the plea agreement.  In making its determination, the court noted that Palermo didn't have any questions at the plea

3

hearing, said that he had enough time to review the plea agreement, agreed that he wanted to continue with his guilty plea, and entered his plea voluntarily.

¶ 9 After the court indicated it would give him a different advisement if he wanted to represent himself at the sentencing hearing, Palermo chose to continue with his court-appointed counsel.

### B. Applicable Law and Standard of Review

¶ 10 A criminal defendant has a constitutional right to have an impartial judge at all stages of the proceedings. *See Sanders v. People*, 2024 CO 33, ¶¶ 27-28. Thus, a judge may not preside over a criminal proceeding if he is actually biased — that is, the judge is "interested or prejudiced with respect to the case," § 16-6-201(1)(d), C.R.S. 2025, such that, "in all probability," he will be unable to "deal[] fairly with a party," *People v. Julien*, 47 P.3d 1194, 1197 (Colo. 2002). And even if he harbors no actual bias, a judge should recuse himself from any case "in which the judge's impartiality might reasonably be questioned." *People in Interest of A.G.*, 262 P.3d 646, 650 (Colo. 2011) (quoting C.J.C. 2.11(A)).

¶ 11    However, "[u]nless a reasonable person could infer that the judge would in all probability be prejudiced against [a party], the judge's duty is to sit on the case." *Smith v. Dist. Ct.*, 629 P.2d 1055, 1056 (Colo. 1981).  A reasonable person is "well-informed, thoughtful and objective" rather than "hypersensitive, cynical, and suspicious." *People v. Owens*, 219 P.3d 379, 386 (Colo. App. 2009) (citation omitted).

¶ 12    Whether a district court judge had a duty to recuse himself is a question of law that we review de novo.  *Richardson v. People*, 2020 CO 46, ¶ 22.

¶ 13    A district court must establish that a defendant has a well-founded reason for believing that court-appointed counsel can't or won't represent him before appointing substitute counsel. *People v. Bergerud*, 223 P.3d 686, 694 (Colo. 2010).  At a *Bergerud* hearing, the court must receive information from both the defendant and the attorney about the nature of their conflict to allow the district court to determine whether the defendant is entitled to substitute counsel.  *Id.* at 694-95.  In making this inquiry, the court may examine a defendant and his counsel's

disagreement "without infringing on the attorney-client privilege."

*Id.* at 694.

### C.    Analysis

#### 1.    The Court Didn't Err By Failing to Have a Different District Court Judge Preside Over the *Bergerud* Hearing

¶ 14    Palermo argues that a *Bergerud* hearing "should generally be held in front of a different, neutral judge." We aren't persuaded.

¶ 15    In *Bergerud,* the supreme court established a four-factor test to guide district court and appellate inquiry into whether substitute counsel is warranted.[2]  223 P.3d at 695.  The supreme court did not, however, address whether a judge other than the one presiding over the case should conduct the hearing on a defendant's request for substitute counsel.  But it's worth noting that in *Bergerud* the same judge who was presiding over the underlying case oversaw the hearing on the defendant's request for substitute counsel.  *See id.* at 692.  The supreme court neither suggested that this was

---

[2] The *Bergerud* factors are (1) the timeliness of the defendant's request; (2) whether the defendant substantially and unreasonably contributed to the underlying conflict; (3) whether the attorney-client conflict was so great that it resulted in a total lack of communication or otherwise prevented an adequate defense; and (4) the adequacy of the court's inquiry into the defendant's complaint.  *Bergerud,* 223 P.3d at 695.

improper nor instructed that a different judge handle the matter on remand. *See id.* at 705-07. Thus, despite Palermo's assertion otherwise, *Bergerud* doesn't require that a different judge hear a defendant's request for substitute counsel.[3]

¶ 16    The other cases Palermo cites in support of his argument, *People v. Mills*, 163 P.3d 1129 (Colo. 2007), and *People v. Delgadillo*, 2012 COA 33, are likewise inapposite. *Mills* discussed how a district court should proceed when postconviction counsel — a public defender — requests to withdraw due to an alleged conflict arising from a different public defender's earlier representation of the same defendant. 163 P.3d at 1132-35. *Delgadillo* concerned a court's sua sponte, midtrial decision to hold "a proceeding in camera for the prosecutor to question defense counsel" about counsel's advice to the defendant without the defendant's waiver of his attorney-client privilege. *Delgadillo*, ¶¶ 2-3, 11-12. Moreover, neither case stands for the general proposition — asserted by

---

[3] We're aware that in some Colorado judicial districts *Bergerud* hearings are routinely conducted by a judge other than the trial judge. Nothing in *Bergerud* prohibits this, and we don't mean to suggest that a *Bergerud* hearing *must* be heard by the judge presiding over the case.

Palermo — that when a concern arises implicating a defendant's attorney-client privilege with his court-appointed counsel, the substance of the concern must be heard by a judge other than the one assigned to the case. *Cf. People v. Schultheis*, 638 P.2d 8, 14 (Colo. 1981) (when *counsel* asks to withdraw due to an alleged irreconcilable conflict, "counsel should proceed with a request for a record out of the presence of the trial judge and the prosecutor if the court denies the motion to withdraw").

¶ 17    Palermo argues that a different judge should have handled his *Bergerud* hearing because his reaction to the judge's decision not to appoint him new counsel "may have tainted the judge's view of him" for purposes of sentencing. But, generally, what a judge learns in their judicial capacity alone isn't sufficient to support a finding of bias that requires recusal. *See Smith*, 629 P.2d at 1057*; Sanders*, ¶¶ 32, 42 (a remote and insubstantial risk of bias doesn't mandate recusal; rather, recusal is required only when a judge is actually biased or there is an objectively reasonable probability that the judge will be unable to deal fairly with a party under the circumstances). And, apart from overseeing the *Bergerud* hearing, Palermo hasn't put forth any other reasons the assigned judge

might have been biased. *See Richardson,* ¶ 37 (rejecting the defendant's argument that a judge should have recused himself when "nothing in the record reasonably call[ed] into question the judge's impartiality toward the parties").

¶ 18    Accordingly, we conclude that it wasn't error for the assigned judge to preside over the *Bergerud* hearing.

### 2.    The Court Didn't Err by Failing to Advise Palermo About Waiving His Attorney-Client Privilege

¶ 19    Palermo also argues that the district court erred by failing to advise him that he risked waiving his attorney-client privilege during the *Bergerud* hearing. We disagree.

¶ 20    The client holds the attorney-client privilege, which protects communications related to legal advice between an attorney and their client. *Delgadillo,* ¶ 15. However, "a request for new counsel necessarily implies a limited waiver of the attorney-client privilege" because an attorney's obligations "must yield to the court's need to investigate the nature of the attorney-client dispute." *Bergerud,* 223 P.3d at 703. And *Bergerud* allows a court to "inquire as to pertinent details of a disagreement between a defendant and

9

counsel *without infringing on the attorney-client privilege.*" *Id.* at 694 (emphasis added).

¶ 21     Because Palermo's request for new counsel, by its nature, implied a limited waiver of his attorney-client privilege, the court didn't err by not advising him of this waiver. *See id.* at 703; *see also People v. Trujillo*, 144 P.3d 539, 543 (Colo. 2006) (noting that a defendant may impliedly waive the attorney-client privilege by placing at issue the "propriety of advice given" by their attorney).

### III.     Plea Agreement

### A.     Additional Facts

¶ 22     Paragraph two of Palermo's written plea agreement stated that he would plead guilty to an amended count of "[a]ssault in the second degree," but in the same sentence, it provided a citation to section 18-3-402(1)(a), C.R.S. 2025, the sexual assault statute. Paragraph five of the agreement listed the elements of second degree assault with a deadly weapon.[4]  *See* § 18-3-203(1)(b), C.R.S. 2025.  Paragraph three of the plea agreement, entitled "Terms of the

---

[4] Palermo's defense counsel noted that this was a "plea of convenience."  There is no indication that a deadly weapon was involved in the factual circumstances underlying the offense.

Plea Agreement," stated that the parties agreed to a sexual factual basis for the plea, along with a sentencing range of five to sixteen years in the custody of the Department of Corrections (DOC). Then, in paragraph four, the agreement explained that a class 4 felony was punishable by a term of two to twelve years of imprisonment depending on mitigating or aggravating circumstances.

## B. Analysis

¶ 23 Palermo contends that the district court erred by sentencing him without affirming that he understood and agreed to the plea because the written plea agreement indicated he was pleading guilty to second degree assault with a deadly weapon but cited the statute for sexual assault. He notes that while both crimes are class 4 felonies, they have different sentencing ranges. Palermo argues that, collectively, the ambiguity of the written agreement, his mental health, his asserted conflict with his attorney, and the lack of discussion at the plea hearing regarding the elements of the crime to which he was pleading guilty created a situation that required the court to affirm "that he understood and agreed to the crime of conviction and sentencing range before proceeding to sentencing."

¶ 24    The People contend that we shouldn't consider Palermo's argument because it doesn't challenge his sentence but rather implicates the validity of his plea.  We agree with the People.

¶ 25    A defendant who challenges his guilty plea by asserting that the plea agreement was entered into unknowingly or unintelligently, or that plea counsel provided ineffective assistance, implicates the constitutionality of his conviction.  *See Sanchez-Martinez v. People*, 250 P.3d 1248, 1255 (Colo. 2011) ("[T]o be constitutionally valid, a defendant must enter his guilty plea knowingly, voluntarily, and intelligently."); *Davis v. People*, 871 P.2d 769, 772 (Colo. 1994) (a criminal defendant is constitutionally entitled to the effective assistance of counsel).

¶ 26    A defendant who, before sentencing, challenges the constitutionality of his guilty plea may seek to withdraw the plea under Crim. P. 32(d).  *Kazadi v. People*, 2012 CO 73, ¶ 14. However, after sentencing, a defendant must file a Crim. P. 35(c) motion to withdraw the plea.  *See* Crim. P. 35(c)(2)(I).  This is so because postconviction review of whether a defendant validly waived a constitutional right usually requires consideration of facts brought forward by the defendant that aren't contained in the direct

appeal record. *See Moore v. People*, 2014 CO 8, ¶ 17

("Post-conviction review focuses not only on the sufficiency of the

advisement itself, but also on the actual knowing, voluntary, and

intelligent nature of a defendant's waiver."). Accordingly, because

Palermo's challenge to his sentence is fundamentally a challenge to

the constitutional validity of his guilty plea, it's not properly before

us in this direct appeal, and we decline to consider it further. *See*

*People v. Kirk*, 221 P.3d 63, 64-65 (Colo. App. 2009) (because the

defendant's post-sentencing request to withdraw his guilty plea

required resolution of factual issues, the defendant was required to

raise his request in a Crim. P. 35(c) motion rather than on direct

appeal).

IV.    Sufficiency and Accuracy of Sentencing Evidence

¶ 27    Palermo contends that the district court erred by relying on

insufficient and inaccurate information in imposing his sentence.

We discern no abuse of discretion.

A.    Additional Facts

¶ 28    At the sentencing hearing, both the victim and her mother

said that Palermo forced himself on the victim more than once, and

they requested the maximum sentence. On the other hand,

Palermo's mother said that the victim's mother told her that the victim was a "willing participant" in having sex with Palermo. The court responded that it was "not going to entertain anything that is placing blame" on the victim.

¶ 29 Before Palermo addressed the court, the court indicated that it would put "some limitation" on Palermo's statements by "not allow[ing] [Palermo] to use [his statements] as an opportunity to further victimize the family or . . . place any blame on the victim."

¶ 30 Palermo said that he was angry because the way that the victim and her family "portrayed the situation" was "false" and "not true." Palermo said that he didn't physically attack the victim or force himself on her and that they had a consensual relationship. Thus, he requested the minimum sentence in the range.

B. Applicable Law and Standard of Review

¶ 31 We will uphold a sentence if it is (1) within the range required by law; (2) based on appropriate considerations as reflected in the record; and (3) factually supported by the circumstances of the case. *People v. Fuller*, 791 P.2d 702, 708 (Colo. 1990).

¶ 32 We review a sentencing decision for an abuse of discretion. *See People v. Torrez*, 2013 COA 37, ¶ 71. A district court has broad

14

discretion in sentencing when, as here, it imposes a sentence within the statutory range. *People v. Rice*, 606 P.2d 1300, 1302-03 (Colo. 1980). In exercising its discretion, the court should consider, among other things, the nature of the offense; the offender's character, rehabilitative potential, and criminal history; any aggravating or mitigating circumstances; and the protection of the public. *Torrez*, ¶ 73. However, the court may find certain factors more compelling than others and may conclude that "the circumstances of the crime alone" justify a harsh sentence. *Id.* at ¶ 74.

¶ 33 We won't reverse a sentencing decision unless the court imposed a sentence that is manifestly arbitrary, unreasonable, or unfair or is based on an erroneous construction of the law. *People v. Herrera*, 2014 COA 20, ¶ 16.

## C. Analysis

¶ 34 As applicable here, the mandatory sentencing range for second degree assault with a deadly weapon is five to sixteen years. § 18-3-203(2)(b); § 18-1.3-406(2)(a)(I)(A), (2)(a)(II)(C), C.R.S. 2025 (defining second degree assault with a deadly weapon as a crime of violence); § 18-1.3-401(1)(a)(V.5)(A), (8)(a)(I), (10)(a), (10)(b)(XII),

15

C.R.S. 2025 (outlining the presumptive sentencing range for class 4 felonies and aggravated sentencing ranges for crimes of violence and extraordinary risk crimes).

¶ 35     Although the court sentenced Palermo within the statutory range, he contends that the court improperly considered statements from the victim and her mother that Palermo forced himself on the victim while precluding Palermo and his mother from introducing rebuttal information about the victim's consent.

¶ 36     But, as indicated in the record, the court explicitly acknowledged testimony from Palermo's mother that the victim's mother had previously said that the victim consented to a sexual relationship with Palermo.  And the court permitted Palermo to point out discrepancies in the victim's account of events, his perception that he and the victim had a consensual relationship, and his position that he didn't physically attack or force himself on the victim.  Additionally, the court noted that it had reviewed the presentence investigation report and the sex offense-specific evaluation, both of which provided Palermo's version of events, including his assertion that his relationship with the victim was consensual.  The record thus refutes Palermo's assertion that he

and his mother were precluded from introducing evidence of consent at the sentencing hearing.  And Palermo fails to explain how the court otherwise relied on inaccurate information in imposing his sentence.

¶ 37 After considering all of the above information, the court indicated it had concerns about Palermo's four prior felony convictions, including a prior conviction for a sexual offense involving a minor, and lack of accountability for his actions in this case.  Palermo doesn't challenge the appropriateness of these other sentencing considerations.  *See Torrez*, ¶ 73.  In any event, the court wasn't required to discuss each factor relevant to its decision; it was only required to provide a reasonable explanation for its sentencing decision.  *See id.* at ¶ 74; *see also People v. Myers*, 45 P.3d 756, 757 (Colo. App. 2001) ("The fact that a sentencing court finds aggravating factors to be more compelling than mitigating factors does not constitute an abuse of discretion or indicate that the trial court failed to consider evidence of mitigation.").

¶ 38 Because Palermo's sentence falls within the statutory range, was based on appropriate considerations, and is supported by the

circumstances of the case, we won't substitute our judgment for that of the district court. *See Fuller*, 791 P.2d at 708.

## V.    Disposition

¶ 39    The sentence is affirmed.

JUDGE TOW and JUDGE LUM concur.